(No. 53259.—

ELMER E. SCHLESSMAN III, Appellant, v. MAX HENSON, Appellee.

*Opinion filed December 1, 1980.*

Marvin Gerstein, of Kahr & Gerstein, of Champaign, for appellant.

Vance I. Kepley and Nancy M. Riddle, of Reno, O'Byrne & Kepley, of Champaign, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiff, Elmer E. Schlessman III, brought this personal injury action in the circuit court of Champaign

County, charging defendant, Max Henson, doing business as Champaign Motor Speedway, with negligence in design and operation of his racetrack. The circuit court granted summary judgment for defendant because plaintiff had signed an agreement exculpating defendant from liability. A majority of the appellate court affirmed (80 Ill. App. 3d 1139), and we granted leave to appeal. Plaintiff raises issues generally concerning whether the occurrence in question presents factual questions about the exculpatory agreement which preclude a summary judgment procedure and whether the agreement was an adhesion contract that should not be enforced.

On June 4, 1976, plaintiff, who was a participant in numerous amateur stock-car races, was auto racing on defendant's racetrack when a portion of the upper track embankment collapsed, causing plaintiff's car to crash. Prior to using the racetrack, plaintiff had signed a document captioned "Waiver and Release from Liability and Indemnity Agreement." In general, the terms of the agreement provided, *inter alia,* that, in consideration for use of the racing surface, plaintiff would not hold defendant liable for any injuries plaintiff sustained as a result of defendant's negligence or otherwise while plaintiff was using the racing surface. The relevant portion of the agreement reads as follows:

> "IN CONSIDERATION of being permitted to enter for any purpose the RESTRICTED AREA (herein defined as the area to which admission for the general public is prohibited, including but not limited to the pit area, racing surface and infield, including walkways, concessions and other appurtenances therein) each of the Undersigned, for himself and personal representatives, assigns, heirs and next of kin, agrees, and on the direct representation that he has, or will, prior to the inception of the racing program, inspect such RESTRICTED AREA and he does further warrant that his participation in the scheduled racing program and his entrance upon the RESTRICTED AREA, constitute an acknowledgment that he had inspected the

RESTRICTED AREA and that it is safe and reasonably suited for the purposes of the racing program:

    1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the Promoter, Participants, Racing Association, Track Operator, Track Owner, Landowner, and each of them, their officers, and employees, all for purposes herein referred to as RELEASEES, from all liability to the Undersigned, his personal representatives, assigns, heirs and next of kin for all loss or damage, and any claim or demands therefor, on account of injury to the person or property or resulting in death of the Undersigned, whether caused by the negligence of Releasees or otherwise while the Undersigned is upon the Restricted Area ***.″

Plaintiff now contends that the circuit and appellate courts were in error because the collapse of the track embankment culminating in his crash was completely outside the scope of plaintiff's expectations and the sweeping language in the release. Plaintiff maintains that a question of fact was presented concerning whether the scope of the occurrence was within the terms of the parties' release and that this question should be decided by the trier of fact and not in a proceeding for summary judgment. He also suggests that the parties did not realize the conditions of the track, which amounted to a mutual mistake of fact, thus preventing application of the release agreement. Plaintiff further contests defendant's claim that he assumed the risk, which would present a factual question rendering inappropriate the summary judgment procedure. Finally, plaintiff maintains that the release was an adhesion contract and that he should be allowed to present evidence to support this claim.

The appellate court has addressed the validity of exculpatory clauses in contracts with amateur race drivers, absent any legislative limitation thereon. In *Morrow v. Auto Championship Racing Association, Inc.* (1972), 8 Ill. App. 3d 682, the plaintiff was repairing his car in a pit area of the track when he was seriously injured by another race

car careening into that area. In reviewing the relationship of the parties, that court concluded that an agreement signed by plaintiff exculpating defendant was not against public policy. Accord, *Tope v. Waterford Hills Road Racing Corp.* (1978), 81 Mich. App. 591, 265 N.W.2d 761; *LaFrenz v. Lake County Fair Board* (Ind. App. 1977), 360 N.E.2d 605.

The racing of automobiles at a high speed in limited areas gives rise to various situations which have resulted in the death or injury to drivers, mechanics and spectators at these events. These accidents may occur because of factors involving mechanical failures, defective design of guardrails, driver error or weather conditions affecting driving surfaces. In sum, a myriad of factors, which are either obvious or unknown, may singly or in combination result in unexpected and freakish racing accidents. Experienced race drivers, such as plaintiff, are obviously aware of such occurrences and the risks attendant to the sport of auto racing. The parties may not have contemplated the precise occurrence which resulted in plaintiff's accident, but this does not render the exculpatory clause inoperable. In adopting the broad language employed in the agreement, it seems reasonable to conclude that the parties contemplated the similarly broad range of accidents which occur in auto racing.

Nor do we find that the release was signed by plaintiff when the parties were operating under a mutual mistake of fact. The release in question was designed to encompass all claims against defendant based on its negligence, even though the precise cause of the accident may have been extraordinary. The very nature of the parties' activity requires this result, absent contrary legislation.

We further reject plaintiff's claim that the release was tantamount to an adhesion contract. The validity of such a contention, as it pertains to exculpatory clauses between

private parties, depends on whether there exists a substantial disparity of the parties' bargaining positions (15 Williston, Contracts sec. 1763A, at 234 (3d ed. 1972)), and whether the agreement is violative of public policy or based on the social relationship of the parties (*Jackson v. First National Bank* (1953), 415 Ill. 453; *Kubisen v. Chicago Health Clubs* (1979), 69 Ill. App. 3d 463). Consideration of these factors does not support plaintiff's position. While it is obvious that plaintiff would not have been allowed to use the racetrack had he not signed the release, plaintiff was under no economic or other compulsion to sign the release in order to engage in amateur auto racing (see *LaFrenz v. Lake County Fair Board* (Ind. App. 1977), 360 N.E.2d 605), and as previously noted, it has been held that defendant's exculpatory provision is not contrary to public policy.

Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*