LYLE SIMPSON, as Adm'r of the Estate of Jerry J. Simpson, Deceased, Plaintiff-Appellant, v. BYRON DRAGWAY, INC., *et al.*, Defendants-Appellees.

Second District   No. 2—90—0631

Opinion filed March 18, 1991.

Peter F. Ferracuti and Mark A. Schindler, both of Law Offices of Peter F. Ferracuti, P.C., of Ottawa, for appellant.

Paul C. Cozzi, John Edwin Norton, and James L. DeAno, all of O'Reilly, Cunningham, Norton & Mancini, of Wheaton, for appellees.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Lyle Simpson, as administrator of the estate of Jerry Simpson (decedent), appeals from an order of the circuit court of Winnebago County, which granted summary judgment in favor of defendants, Byron Dragway, Inc. (Dragway), and The National Hot Rod Association (NHRA). Plaintiff contends that there are genuine issues of material fact which preclude the granting of summary judgment. We affirm in part, reverse in part and remand.

On August 3, 1986, decedent, a licensed and experienced race car driver, was killed when his dragster collided with a deer during a race at the Dragway. On April 3, 1987, his estate filed a three-count complaint against the Dragway which sought damages for wrongful death, pain and suffering, and property loss. On May 20, 1988, the estate filed a nine-count amended complaint which added the NHRA as a defendant and sought damages based upon negligence and willful and wanton conduct.

On January 31, 1990, the Dragway filed a motion for summary judgment, with the NHRA doing the same nearly two months later. Both defendants alleged that they owed no duty to decedent to protect him against stray deer and, more importantly, were not liable as a matter of law due to releases which decedent executed. Plaintiff

filed responses to both summary judgment motions, and the court heard arguments on June 1, 1990. Following arguments of counsel, the trial court granted the motion of each defendant. The court determined that the release effectively precluded liability against the Dragway and, furthermore, that there were no facts submitted to support plaintiff's willful and wanton counts. With respect to the NHRA, the court held that it did not exercise ownership or control over the Dragway. Thus, the court determined that summary judgment was proper for both defendants. Plaintiff filed a timely notice of appeal.

The following statement of facts was gathered from the pleadings and evidence adduced during the numerous depositions. On August 3, 1986, decedent registered to race at the Dragway. Prior to entering the racetrack, he executed the following release of liability:

"This release limits your right to recovery of damages in case of accident. Read it before signing.

In applying to enter this race I promise that I will inspect the track prior to running on it, will assure myself that the track and adjacent areas are properly designed and maintained, and further agree that I will not participate in this race until I have completed an inspection which satisfies me that these areas are safe for race purposes. I will further note existing weather conditions and do agree that I voluntarily assume all risks arising from conditions related to use of the track area by myself or others.

I do agree to hold harmless and indemnify the owners and possessors of this track for any loss, cost, expense, damages or injury arising from my participation in this event."

After executing the release, decedent proceeded to prepare for a time run. The time run took place before the actual elimination races were held.

According to track announcer Roger Millsap, decedent began his time run shortly before 1 p.m. Approximately midway through the run, Millsap observed a deer leave the wooded area beyond the race track and start to run toward the track. Shortly after decedent's dragster passed the finish line, it hit the deer. Millsap described the impact as "a big burst of red, blood, and the dragster seemed to come to a stop quite quickly." After the impact, Millsap announced to the spectators that he "knew this was going to happen." Millsap indicated that he made the statement because he could see that the dragster and the deer were going to "make impact."

Millsap left the control tower and went down to decedent's dragster. Terry Simpson, decedent's brother, had managed to pull dece-

dent out of the dragster when Millsap arrived. An ambulance crew was also present. Decedent was still alive at this time, but was coughing and, according to Millsap, the left side of his body appeared to be crushed. However, decedent died shortly thereafter. Millsap made an announcement to the spectators, and all races were cancelled for the day.

It was Millsap's belief that decedent never saw the deer before the impact. Millsap, who was also a race car driver, explained that a dragster restricts the driver's vision to "just straight ahead" due to the limited amount of room in the car. In addition, he did not see decedent attempt any evasive maneuvers before the accident. Millsap pointed out that decedent did not apply his brakes before the impact because he completed the quarter-mile run in 8.95 seconds.

Millsap further indicated during his deposition that the length of the race track was 1,320 feet (one-quarter mile) from start to finish, with another 1,000 feet beyond the finish line to enable the cars or dragsters to slow down. A guardrail ran the entire length of the one-quarter-mile track and a four-foot-high chain link fence protected the grandstand and pit areas. There were no guardrails or fences beyond the finish line.

Millsap stated that he had seen deer near the finish line during the summer of 1986, approximately two months before decedent's accident. Millsap did not stop the racing at that time because the deer were not on the dragstrip. However, he was at the Dragway in 1984 as a spectator when races were halted due to the presence of deer "in the vicinity" of the track. Millsap did not personally see the deer at that time.

Ronald Leek, the president and general manager of the Dragway, stated that he was working at the track on the day of decedent's accident but did not actually see the accident. Leek observed decedent about three or four minutes after the accident and determined that he was "fatally injured."

Leek indicated that he saw deer at the edge of the racetrack on one other occasion before August 3, 1986. However, the deer did not enter the track, and the racing was not halted. Leek denied stopping any races in 1984 due to the presence of deer, stating that he did not see any deer near the Dragway prior to 1986. However, Leek did remember seeing a group of dogs from a nearby "hound club" approach the track in 1984, but the racing was not stopped because the dogs appeared during intermission.

Terry Simpson, decedent's brother, stated that he was also a race car driver and was participating in the time runs on August 3, 1986.

Terry indicated that he drove in the time run immediately before decedent made his final run. Terry was in a position to see decedent's entire time run, including the impact with the deer. Terry estimated decedent's speed to be 150 miles per hour at the time of the impact.

Terry also stated that he had been to races at the Dragway during the previous 10 years and had never seen any deer or other wild animals in the woods near the racetrack or on the track itself.

The trial court relied on these facts to determine that summary judgment was proper in this case. The court stated:

"It appears to me that the release signed by [decedent] is very specific, it is certified that he had inspected the track and the adjoining areas and satisfied himself that the premises was [*sic*] safe in that the area was properly designed and maintained and that he was voluntarily assuming all risks and would hold the drag way harmless against any liability for loss or injury resulting from his participation.

The design and maintenance of the track are apparently the basis for the plaintiff's allegation of negligence in this suit. I find, therefore, that as a matter of law the plaintiff's action is barred by reason of his voluntarily entering into the exculpatory agreement as a preagreement participation in the race, and I find no material issue of fact to be determined on that issue.

Since willful and wanton conduct by the defendant might be actionable even in the face of the signed release, I would rule on the defendant's summary judgment contention that there is no material issue of fact on that count. I find that there are no facts submitted by plaintiff to support a theory of willful and wanton conduct by the defendant.
∗∗∗

To complete the picture in the event of any appeal, I would rule that the plaintiff's claim of simple negligence would survive the drag way's summary judgment motion. I find that there are material issues of fact, particularly concerning the questions of knowledge by the defendant and foreseeability of the danger.

Therefore, I would grant the motion by Byron Dragway for summary judgment.

As to the Hotrod Association's motion, I will also grant summary judgment. It appears to me that no action could be maintained for any theory of premises liability against the Hotrod Association. I find nothing in the summary judgment materials

to suggest that the association had or exercised ownership or control over the facilities or had any significant control over the conduct of the race which would render them liable for the injury."

On appeal, plaintiff contends that there are genuine issues of material fact present in this case, namely, whether the release of liability, which decedent signed, encompassed the risk of striking a deer during the course of a race and whether the Dragway's failure to take preventive measures after it became aware of the deer's presence on the racetrack constituted willful and wanton conduct. We will address each of plaintiff's contentions in turn.

■■ ■ A motion for summary judgment should be granted only if the pleadings, depositions, and admissions on file demonstrate that no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) The granting of a motion for summary judgment is a drastic measure and should be used only when the evidence construed strictly against the movant clearly establishes the right thereto. (*Purtill*, 111 Ill. 2d at 240; *Wadden v. Village of Woodridge* (1990), 193 Ill. App. 3d 231, 236-37.) We will reverse a trial court's order granting summary judgment only if we determine that a genuine issue of material fact exists. *Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294; *Wadden*, 193 Ill. App. 3d at 237.

■■ We find it necessary to address each defendant separately on our review of the trial court's order granting summary judgment in this case. With respect to the NHRA, the court determined that it did not exercise ownership or control over the Dragway or the race itself. Absent any ownership or control, the court found that "no action could be maintained for any theory of premises liability" against the NHRA. We agree with the court's reasoning with respect to this defendant.

In a cause of action alleging negligence, the plaintiff must establish the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140; *Dinges v. Gabardi* (1990), 202 Ill. App. 3d 732, 735.) The existence of a duty is a question of law for the trial court to determine. (*Dinges*, 202 Ill. App. 3d at 735; *Romano v. Bittner* (1987), 157 Ill. App. 3d 15, 23.) A defendant does not owe a duty to a plaintiff if the defendant does not control or intend to control the land. *Collins v. Mid-America Bag Co.* (1989), 179 Ill. App. 3d 792, 794; *Stedman v. Spiros* (1959), 23 Ill. App. 2d 69, 86.

The *Collins* decision is particularly illustrative to the situation present in this case. In *Collins*, the defendant organized a softball

game in which the plaintiff participated and was injured. The plaintiff filed a negligence action against the defendant, alleging that the defendant had a duty to provide a safe playing field. The trial court dismissed the lawsuit, and we affirmed, holding that the defendant only had permission to use the land and did not actually control or intend to control the land. (*Collins*, 179 Ill. App. 3d at 794.) Thus, the defendant could not be held liable as a possessor of the land because it did not owe a duty to plaintiff with respect to the condition of the land. 179 Ill. App. 3d at 794.

Likewise, defendant NHRA did not own or control the land in the case at bar. Instead, the NHRA at most sanctioned the event, which meant that it awarded points for performance at the event. The NHRA did not own the track or otherwise control the track on the day in question. Absent any evidence of ownership or control, we find that the NHRA did not, as a matter of law, owe decedent a duty of care. Thus, the trial court properly granted the NHRA's motion for summary judgment as to all counts.

We will now address plaintiff's contentions as they relate solely to the Dragway. Plaintiff first contends that summary judgment should not have been granted because the release which decedent executed did not contemplate the risk of striking a deer during a race. Plaintiff points out that the danger of hitting a deer does not ordinarily accompany the risks associated with the sport of auto racing.

The Dragway disagrees with plaintiff's characterization of this issue, instead asserting that our inquiry should focus on whether the design and maintenance of the dragway were sufficient to prevent the unexpected entry of "any moving object onto the track."

■ In general, exculpatory agreements are enforceable unless it would be against the settled public policy of this State to do so or there is something in the social relationship of the parties which militates against upholding the agreement. (*Harris v. Walker* (1988), 119 Ill. 2d 542, 548; *Falkner v. Hinckley Parachute Center, Inc.* (1989), 178 Ill. App. 3d 597, 602.) We note that such agreements have been upheld in an auto racing context where an injured driver or participant has brought suit against an owner or operator of a raceway. (See *Schlessman v. Henson* (1980), 83 Ill. 2d 82, 86; *Lohman v. Morris* (1986), 146 Ill. App. 3d 457, 460; *Morrow v. Auto Championship Racing Association, Inc.* (1972), 8 Ill. App. 3d 682, 685-86.) Plaintiff does not contend that the agreement in this case is *per se* unenforceable, but that it should not be enforced under these specific facts because the risk was not foreseeable.

■ An exculpatory agreement, such as the release of liability form in the present case, constitutes an express assumption of risk in that one party is consenting to relieve another party of a particular obligation. (*Falkner*, 178 Ill. App. 3d at 602; *Russo v. The Range, Inc.* (1979), 76 Ill. App. 3d 236, 238.) In order to effectively assume the risk of some occurrence, it must be demonstrated that the danger which caused the injury was one which ordinarily accompanied the activity and that the plaintiff knew, or should have known, that both the danger and the possibility of injury existed before the occurrence. (*Falkner*, 178 Ill. App. 3d at 602; *Larsen v. Vic Tanny International* (1984), 130 Ill. App. 3d 574, 576.) Thus, foreseeability of a specific danger is an important element of the risk which a party assumes and will often serve to define the scope of an exculpatory agreement. *Larsen*, 130 Ill. App. 3d at 577.

Plaintiff argues that the "striking of a deer while operating a race car on a drag strip is not the type of risk which ordinarily accompanies the sport." Plaintiff relies on *Larsen* to support his argument that, at the very least, reasonable minds could differ on this issue such that summary judgment should not have been granted.

In *Larsen*, the plaintiff, a member of the defendant health club, was injured while exercising at the club as a result of inhaling gaseous vapors. The plaintiff signed a release as a part of his membership agreement which relieved the defendant of liability for "any damages arising from personal injury sustained *** on or about the premises of the said gymnasiums or as a result of their using the facilities and the equipment therein." (*Larsen*, 130 Ill. App. 3d at 575.) The trial court denied the defendant's motion for summary judgment, and the appellate court affirmed. The appellate court determined that the plaintiff could only assume the risks of a danger which he could reasonably foresee, such as the possibility of slippery surfaces near a swimming pool or steam room. (130 Ill. App. 3d at 578.) If the plaintiff could reasonably foresee the danger, then he or she could exercise a higher degree of caution in order to minimize the risks associated with the danger. (130 Ill. App. 3d at 578.) The court determined that, as a matter of law, the plaintiff could not reasonably foresee the possibility that dangerous vapors would be released while he was exercising at the health club. 130 Ill. App. 3d at 578.

■ We agree with plaintiff that *Larsen* supports his contention that summary judgment should not have been granted in this case. Whether a particular injury is one which ordinarily accompanies a certain activity and whether a plaintiff appreciates and assumes the risks associated with the activity often constitute a question of fact. (See

*Falkner*, 178 Ill. App. 3d at 602; *Russo*, 76 Ill. App. 3d at 239-40.) We believe this is such a case.

In making this determination, we are mindful of *Schlessman* and its progeny, which the Dragway cites in support of its position. In *Schlessman*, our supreme court reviewed a broadly worded exculpatory agreement in which a race car driver acknowledged that he had inspected the "restricted area" (which included, but was not limited to, the "pit area, racing surface and infield, including walkways, concessions and other appurtenances therein") and found these areas to be "safe and reasonably suited for the purposes of the racing program." (*Schlessman*, 83 Ill. 2d at 84-85.) During the race, a portion of the track collapsed and caused the plaintiff to crash his car. The supreme court determined that the exculpatory clause effectively barred any recovery from the racetrack. The court stated:

> "The racing of automobiles at a high speed in limited areas gives rise to various situations which have resulted in the death or injury to drivers, mechanics and spectators at these events. These accidents may occur because of factors involving mechanical failures, defective design of guardrails, driver error or weather conditions affecting driving surfaces. In sum, a myriad of factors, which are either obvious or unknown, may singly or in combination result in unexpected and freakish racing accidents. Experienced race drivers, such as plaintiff, are obviously aware of such occurrences and the risks attendant to the sport of auto racing. The parties may not have contemplated the precise occurrence which resulted in plaintiff's accident, but this does not render the exculpatory clause inoperable." 83 Ill. 2d at 86.

The Dragway argues that the accident in the present case, like that in *Schlessman*, was "unexpected and freakish." Defendant contends that decedent, by virtue of his participation in an inherently dangerous activity, was deemed to have contemplated a wide range of incidents which could give rise to an injury, including the possibility that an animal would run onto the racetrack. We disagree.

Although *Schlessman* held that the parties to an exculpatory agreement could contemplate that a wide range of accidents occur in auto racing, it did not hold that the range of accidents contemplated is without limit. The specific accident involved in *Schlessman* occurred as a result of a defective portion of the track. While the parties may not have contemplated that this section of the track would collapse during the race, they could contemplate a "broad range of accidents which occur in auto racing." (*Schlessman*, 83 Ill. 2d at 86.) Problems

with the racetrack surface are the type of risk which the exculpatory agreement was obviously intended to cover, even if it resulted in a "freakish" accident.

We also note that the Dragway correctly points out that other court decisions have upheld exculpatory agreements which have precluded recovery for various injuries. (See *Harris*, 119 Ill. 2d at 549-50 (horseback riders and falling from horse); *Garrison v. Combined Fitness Centre, Ltd.* (1990), 201 Ill. App. 3d 581, 585-86 (weightlifter and injury from weights); *Falkner*, 178 Ill. App. 3d at 602-03 (sky diver and entangled parachute during jump); *Lohman*, 146 Ill. App. 3d at 460-61 (pit crew member at racetrack struck by race car).) However, in each of these cases, the danger which caused the injury or fatality was one which ordinarily accompanied the activity, even if the parties themselves may not have anticipated the precise circumstances which resulted in the accident.

In the present case, the danger which caused decedent's accident was not the type of risk which ordinarily accompanied the sport of auto racing. As such, a question of fact remains on this issue, and the trial court erred in granting summary judgment. See *Larsen*, 130 Ill. App. 3d at 577-78 (question of whether danger which the plaintiff was subjected to was a type which the parties intended to be excused by the exculpatory agreement was a question of fact); *Russo*, 76 Ill. App. 3d at 239-40 (question of fact existed as to whether the plaintiff assumed the risk of injury); see also *Calarco v. YMCA* (1986), 149 Ill. App. 3d 1037, 1043-44.

We next consider whether the trial court erred in granting the Dragway's motion for summary judgment on the willful and wanton counts of the amended complaint. Plaintiff asserts that a question of fact exists as to whether the Dragway's conduct constituted an "utter indifference to or conscious disregard for a person's safety" by failing to provide barriers to prevent deer and other animals from entering the racetrack.

■■ ■ A complaint for willful and wanton conduct must allege the existence of a duty, a breach of that duty, and an injury proximately caused by the breach, along with an allegation that the defendant either intentionally injured the plaintiff or acted in reckless disregard for his safety. (*Scarano v. Town of Ela* (1988), 166 Ill. App. 3d 184, 187; *Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 359-60.) Whether conduct amounts to willful and wanton negligence is normally a question of fact for the jury to determine. *Breck*, 141 Ill. App. 3d at 359; *Glover v. City of Chicago* (1982), 106 Ill. App. 3d 1066, 1075.

The dispute between the parties on this issue concerns whether deer had been observed on or near the racetrack in the past. We will review the deposition testimony available to the trial court to determine if a question of fact exists on this issue.

Roger Millsap, the track announcer, testified that he saw three deer on the spectators' side of the track, near the woods, in the summer of 1986. The races were not stopped at this time. He did state, however, that races were stopped during the summer of 1984 because deer were in the track's vicinity. Millsap was at the track that day, but was not an employee of the track at that time. Although he did not actually see the deer, he indicated that it was Ron Leek's decision to stop the races and "see what happens."

Ron Leek testified that he saw deer near the racetrack approximately two months before the accident, but the races were not stopped. He indicated that the races were not stopped during 1984, or any other year, due to the presence of deer. He did note, however, that dogs from a nearby hound club approached the end of the track on one occasion in 1984, but no races were stopped because the dogs arrived during intermission.

Thus, it is apparent that the Dragway knew that deer and dogs had been sighted near the racetrack on at least two occasions prior to the accident. The question becomes whether the Dragway's failure to take precautionary measures to prevent the animals from entering the track constituted willful and wanton negligence. We believe that this is a question for the trier of fact to answer. It is the trier of fact's function to weigh the evidence, judge the credibility of the witnesses, and draw ultimate conclusions of fact. (*Braun v. Board of Education of Red Bud Community Unit School District No. 132* (1986), 151 Ill. App. 3d 787, 793.) As we previously indicated, the question of whether a defendant's conduct amounts to willful and wanton negligence is normally a question of fact for the fact finder to decide. (*Braun*, 151 Ill. App. 3d at 793; *Breck*, 141 Ill. App. 3d at 359.) Given that a question of fact exists, the trial court's order must be reversed.

For these reasons, the judgment of the circuit court of Winnebago County is reversed with respect to the Dragway, and the cause is remanded for a trial on the merits of the amended complaint. The court's order granting summary judgment in favor of the NHRA is affirmed.

Affirmed in part; reversed in part and remanded.

WOODWARD and NICKELS, JJ., concur.