FOURTH DIVISION

                                     August 27, 1998

No. 1
-96-4215

LEANNE MANESS, Indiv. and as      ) APPEAL FROM THE 

Special Adm'r of the Estate ) CIRCUIT COURT OF

of Edward L. Maness, Deceased, ) COOK COUNTY

 )

Plaintiff-Appellant,       )

 )

v. ) No. 95 L 10687

 )

SANTA FE PARK ENTERPRISES, INC.,      ) 

d/b/a Santa Fe Speedway, and ) 

NATIONAL ASSOCIATION FOR                   

STOCK CAR AUTO RACING, INC., ) HONORABLE

 ) PADDY H. McNAMARA,

Defendants-Appellees. ) JUDGE PRESIDING.

JUSTICE McNAMARA delivered the opinion of the court:

P
laintiff's decedent, Edward L. Maness (Maness), suffered an ultimately fatal heart attack while participating in a stock car race at Santa Fe Speedway (Santa Fe) on July 10, 1993.  Plaintiff, Leanne Maness (plaintiff), filed suit individually and as special administrator of the estate of her husband, seeking damages as a result of Edward's death.  On October 23, 1996, the trial court granted the motion of defendants, Santa Fe Enterprises, Inc., d/b/a Santa Fe Speedway, and National Association for Stock Car Auto Racing, Inc. (NASCAR) (defendants), to dismiss plaintiff's second amended complaint with prejudice.  Plaintiff appeals that order.  We affirm.  The relevant facts are as follows.

On July 10, 1993, Maness participated in an auto race at defendants' race track.  At the time Maness was 51 years old and had been racing stock cars for many years.  During the race Maness suffered an ultimately fatal heart attack.  Maness died on July 11, 1993.  Plaintiff was named special administrator of her husband's estate.

Prior to participating in the July 10, 1993, race, Maness signed three releases/waivers of liability expressly agreeing to release, waive, and discharge defendants from all liability for his injury or death whether caused by the negligence or gross negligence of defendants or otherwise.  

In April 1993, Maness applied for NASCAR membership and a NASCAR license in order to participate in NASCAR sponsored racing events.  In exchange for becoming a member and receiving a NASCAR license Maness paid a $65 fee and signed a "Release and Waiver of Liability and Indemnity Agreement," which provided in pertinent part that Maness:

"1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoter, participants, racing association, sanctioning organization or any subdivision thereof, track operator, track owner, *** from all liability to the undersigned, his/her personal representatives, assigns, heirs and next of kin for any and all loss or damage, and any claim or demands therefore on account of the 'releasees' or otherwise while the undersigned is in or upon the restricted area, and/or competing, officiating in, observing, working for, or for any purpose participating in the EVENT(S);

2.HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the 'releasees' and each of them for any loss, liability, damage, or cost they may incur due to the presence of the undersigned in or upon the restricted area or in any way competing, officiating, observing, or working for, or for any purpose participating in the EVENT(S) and whether caused by the negligence or gross negligence of the 'releasees' or otherwise.

3. HEREBY ASSUMES FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence or gross negligence of 'releasees' or otherwise while in or upon the restricted area and/or while competing, officiating, observing, or working for or for any purpose participating in the EVENT(S)."

Prior to the July 10, 1993, race, Maness also signed a competitor permit, which contained a release and waiver of liability agreement identical to that contained in the NASCAR membership application.  Maness signed this release in consideration for being allowed to compete in the race.

Moreover, on July 10, 1993, Maness paid a fee and obtained a pit permit, which allowed him to enter the pit area at the race track and to compete in the races being held that evening.  The pit permit contained the following release agreement, which Maness signed:

"I hereby release speedway owner, operator, promoter, sanctioning body and any other person or persons connected with the racemeet for which this Pit Permit has been issued from all liability for personal injury or property damage whether arising from claims of negligence, gross negligence or any other cause, while preparing, practicing, qualifying or participating in or attending said racemeet."

On July 6, 1995 plaintiff, individually and as special administrator of her husband's estate, filed a two-count complaint against defendants.  Count I, sounding in negligence/wrongful death, alleged that defendants negligently delayed providing medical assistance to Maness, causing his heart attack to become "irreversible" and resulting in his death.  Count II was brought by plaintiff individually and alleged infliction of mental distress.  The trial court granted defendants' motion to dismiss and granted plaintiff leave to file her first amended complaint.

Plaintiff's first amended complaint set forth expanded versions of the two counts contained in the original complaint.  Count I sounded in negligence, alleging that Maness was participating in a race when his car struck the track's outside wall and rolled to a stop in the track's infield; that Maness gave no hand signal to indicate that he was not in need of medical aid; that defendants negligently failed to immediately stop the race and dispatch medical personnel; that defendants did not dispatch medical personnel until the next race event was completed; that as a proximate result of this negligence Maness's heart attack "went unattended for a protracted amount of time so that it became irreversible"; and that the "danger of not being promptly sent medical assistance was not foreseeable because Maness "had a reasonable expectation that he would receive prompt medical attention."   Count II attempted to state a cause of action for "extreme and outrageous misconduct" alleging:

"19. That the plaintiff, Leanne Maness, was the wife of Edward L. Maness; she was present in the grandstands of the defendants' track; she saw that her husband needed help; she saw no movement in his car; she saw no signal from him indicating that he was all right; she saw his pit crew pleading for someone to go help; she heard others asking officials to send help; she ran to the starter's gate to go help her husband; defendants' employees stopped her; defendants' employees heard her yells, screams and crying; and she observed the defendants' employees refusing to allow a registered nurse from going to her husband's assistance.

20. That the defendants ignored all entreaties for help, refused to allow others to help and observed plaintiff's anguish resulting therefrom.

21. That as a direct and proximate result of the aforesaid extreme and outrageous misconduct of defendants' agents, servants and employees, the plaintiff, Leanne Maness, sustained severe and permanent mental and emotional trauma and shock."

The trial court granted defendants' motion to dismiss the first amended complaint with prejudice on July 11, 1996.  The court found count I to be barred by the releases signed by Maness, which  "were clearly intended to cover any and all risk of death due to the negligence or gross negligence of the defendants."  Count II was dismissed for failure to state a cause of action, as Illinois law does not recognize the tort of "outrageous misconduct" and the facts alleged were insufficient to state a cause of action for intentional or negligent infliction of emotional distress.  The court granted plaintiff leave to file her second amended complaint.

On July 31, 1996, plaintiff filed a four-count second amended complaint.  Counts I and II were repled from the first amended complaint to preserve them for appeal.  Count III alleged the breach of an implied in fact contract between defendants and Maness under which defendants were required to provide "reasonably prompt emergency medical personnel to aid plaintiff's decedent in the event that he became injured or ill."  Count IV alleged that defendants intentionally failed to promptly provide medical assistance to Maness.  Defendants moved to dismiss counts I and II in accord with the court's July 11, 1996 order; to dismiss count III under section 2-619 of the Code of Civil Procedure (the Code)(735 ILCS 5/2-619 (West 1996)) as barred by the releases signed by Maness; and to dismiss count IV under section 2-615 of the Code (735 ILCS 5/2-615 (West 1996)) on statute of limitations grounds and for failure to state a cause of action.

On October 23, 1996, the trial court granted defendants' motion to dismiss plaintiff's second amended complaint with prejudice.  Counts I and II were dismissed for the reasons stated in the court's July 11, 1996, order.  Count III was dismissed based upon the releases signed by Maness, which the court found to clearly absolve defendants from liability for negligent and grossly negligent acts.  The court found that no implied contract to provide prompt medical assistance could coexist with these express waivers of liability.  Count IV was dismissed for failure to state a cause of action.  Plaintiff appeals from this order.

On appeal plaintiff contends that: (1) the trial court erred in ruling that the releases signed by Maness defeated plaintiff's claim for defendants' negligent failure to promptly provide medical assistance; (2) the trial court erred in dismissing count II  because it stated a valid, recognized cause of action for outrageous misconduct; (3) the trial court erred in dismissing count III because it stated a valid cause of action for breach of an implied in fact contract; and (4) the trial court erred in dismissing count IV, which pled a cause of action for intentionally withholding medical assistance. 

Plaintiff first contends that the trial court erred in ruling that the releases signed by Maness defeated her claim for defendants' negligent failure to promptly provide medical assistance to Maness.  Specifically, plaintiff contends that the delay in providing medical treatment during Maness' heart attack was not the type of risk that ordinarily accompanies auto racing and therefore was not covered by the signed releases.  We disagree.

In general, exculpatory contracts, such as the releases signed by Maness, are valid and enforceable in Illinois as long as they are not violative of public policy and there is not a unique relationship between the parties such as common carrier/passenger or employer/employee, which militates against enforcement of the agreement.  
Lohman
 v. Morris
, 146 Ill. App. 3d 457, 497 N.E.2d 143 (1986); 
Harris
 v. Walker
, 119 Ill. 2d 542, 519 N.E.2d 917 (1988).  
Our courts have consistently held that exculpatory contracts, such as the releases signed by Maness, bar negligence claims in the auto racing context.  
Schlessman
 v. Henson
, 83 Ill. 2d 82, 413 N.E.2d 1252 (1980); 
Koch v. Spalding
, 174 Ill. App. 3d 692, 529 N.E.2d 19 (1988); 
Morrow v. Auto Championship Racing Ass'n
, 8 Ill. App. 3d 682, 291 N.E.2d 30 (1972); 
Rudolph v. Santa Fe Park Enterprises, Inc.
, 122 Ill. App. 3d 372, 461 N.E.2d 622 (1984); 
Lohman
, 146 Ill. App. 3d at 461, 497 N.E.2d at 145.

The releases signed by Maness contain broad exculpatory language that clearly releases defendants from 
all liability
 for personal injury or death resulting from their negligence, including their alleged delay in providing prompt medical assistance to Maness.  The decision in 
Schlessman
 is instructive on this point.  Mr. Schlessman was injured while participating in a stock car race when a portion of the track collapsed, causing his car to crash.  Before participating in the race, Schlessman signed a broad release releasing defendants from "all liability" to him "whether caused by the negligence of Releasees or otherwise" while he was in the restricted area.  Plaintiff argued that the occurrence was not within the terms of the release.  In holding plaintiff's negligence claim against the track owner barred by the release the court stated:

"
The release in question was designed to encompass all claims against defendant based on its negligence
, even though the precise cause of the accident may have been extraordinary.  The very nature of the parties' activity requires this result, absent contrary legislation." (Emphasis added.) 
Schlessman
, 83 Ill. 2d at 86, 413 N.E.2d at 1254. 

Maness signed three similarly broad releases releasing defendants from "any and all loss or damage, and any claim or demands therefore on account of the 'releasees' or otherwise" and from "all liability for personal injury or property damage whether arising from claims of negligence, gross negligence, or any other cause."  Maness expressly assumed "full responsibility for ANY RISK OF BODILY INJURY, DEATH, or PROPERTY DAMAGE due to the negligence or gross negligence of 'releasees' or otherwise."  As in 
Schlessman
, these releases were clearly designed to cover all claims against defendants based on their negligence, including their alleged negligent delay in providing medical assistance to Maness.

Plaintiff attempts to circumvent the application of these releases by arguing that the releases do not bar her negligence claim because the risk faced by Maness (a delay in providing medical treatment during Maness' heart attack) was not the type of risk that ordinarily accompanies auto racing and was not foreseeable to Maness.  We reject this argument. 

The risk of requiring medical attention during a race is one that ordinarily accompanies the dangerous sport of auto racing.  Plaintiff admitted as much in her pleadings.  Paragraph 21 of count I states: "Plaintiff's decedent had a reasonable expectation that he would receive prompt medical attention under the circumstances as aforesaid."  Incidents requiring medical attention are common at racetracks.  Maness, as an experienced racer, expected prompt and adequate medical care at every race.  Likewise, he should have expected that negligence on the part of defendants regarding the medical care provided was possible and could result in serious injury or death to participants in the race.  
         

The fact that Maness could not foresee the exact circumstances necessitating prompt medical assistance is irrelevant.  As our supreme court noted in 
Schlessman
:

"A myriad of factors, which are either obvious or unknown, may singly or in combination result in unexpected and freakish racing accidents.  Experienced race drivers, such as plaintiff, are obviously aware of such occurrences and the risks attendant to the sport of auto racing.  
The parties may not have contemplated the precise occurrence which resulted in plaintiff's accident, but this does not render the exculpatory clause inoperable.
  In adopting the broad language 

employed in the agreement, it seems reasonable to conclude that the parties contemplated the similarly 

broad range of accidents which occur in auto racing."  
 
(Emphasis added.) 
Schlessman
, 83 Ill. 2d at 86, 413 N.E.2d at 1254.    

Defendants' reliance on 
Simpson
 v. Byron Dragway, Inc.
, 210 Ill. App. 3d 639, 569 N.E.2d 579 (1991), is misplaced.  The driver in 
Simpson
 was killed when his race car struck a deer that had run onto the racetrack.  The court held that the risk of an animal running onto the racetrack was not the type of risk that ordinarily accompanied the sport of auto racing.  Therefore the incident was not covered by the release signed by plaintiff.

The risk of requiring medical attention during a race, unlike the risk of hitting a stray deer that has wandered onto a racetrack, is one that ordinarily accompanies auto racing as evidenced by plaintiff's admission that Maness had a reasonable expectation of receiving prompt medical attention. Maness accepted this risk and agreed to exculpate defendants from any alleged negligence in connection with it when he executed the broad releases expressly releasing defendants from all liability for personal injury and death arising from any negligence on their part.

Plaintiff's argument that the releases do not apply because Maness was no longer participating in the event at the time of defendants alleged delay in sending medical assistance is untenable.  The release and waiver of liability agreement and the competitor permit signed by Maness specifically state that defendants are released from liability for their negligent and grossly negligent acts "while the undersigned is in or upon the restricted area."  The definition of restricted area expressly includes the infield where Maness sat in his car during defendants' alleged delay in providing medical assistance.  The releases apply to defendants' conduct and the trial court did not err in finding count I barred by them. 

Plaintiff next contends that the trial court erred in dismissing count II because it states a valid, recognized cause of action for outrageous misconduct.  We disagree.

Relying on 
Doe v. Calumet City
, 161 Ill. 2d 374, 641 N.E.2d 498 (1994), plaintiff contends that Illinois courts recognize a tort for outrageous misconduct.  However, the opinion in 
Doe
 makes it clear that outrageous misconduct is one element of the tort of intentional infliction of emotional distress, not a separate and distinct tort.  
Doe
, 161 Ill. 2d at 392, 641 N.E.2d at 506.  Count II does not state a cause of action as Illinois courts do not recognize a cause of action for outrageous misconduct.  Nor does plaintiff state a cause of action for intentional or negligent infliction of emotional distress.

A bystander, such as plaintiff, cannot recover for negligent infliction of emotional distress unless she establishes that: (1) she was in the "zone of danger"; (2) she had a reasonable fear for her own safety; and (3) she suffered physical injury or illness resulting from the alleged emotional distress.  
Rickey v. Chicago Transit Authority
, 98 Ill. 2d 546, 457 N.E.2d 1 (1983).  Count II fails to allege any of these requisite elements.  In order to be in the "zone of danger" a bystander "must have been in such proximity to the accident in which the direct victim was physically injured that there was a high risk to [her] of physical impact."  
Rickey
, 98 Ill. 2d at 555, 457 N.E.2d at 5.  Here plaintiff alleges that she was in the grandstands when she witnessed defendants' negligent failure to provide prompt medical assistance to her husband, who was in the infield of the track.  There was certainly no risk of physical impact to her.  Moreover, count II fails to allege that plaintiff had a reasonable fear for her own safety or that she suffered any physical injury or illness.

To state a cause of action for intentional infliction of emotional distress one must establish that: (1) defendant's conduct was extreme and outrageous; (2) defendant intended that his conduct inflict severe emotional distress or knew there was a high probability that his conduct would cause severe emotional distress; and (3) defendant's conduct in fact caused severe emotional distress.  
Doe
, 161 Ill. 2d at 392, 641 N.E.2d at 506.  Count II fails to allege that defendants intended their conduct to inflict severe emotional distress or that they knew there was a high probability that it would.

We find that the trial court did not err in dismissing count II for failure to state a cause of action.

Plaintiff next contends that the trial court erred in dismissing count III because it stated a valid cause of action for breach of an implied in fact contract.  Specifically, plaintiff contends that defendants accepted Maness' money and agreed to provide him with their services and facilities for racing, including two ambulances with emergency personnel.  According to plaintiff, these circumstances gave rise to an implied in fact contract between defendants and Maness requiring defendants to provide prompt medical attention to Maness in the event that he became injured or ill.

Plaintiff's contention flies in the face of the general principles of contract law.  The law is clear that an implied contract cannot coexist with an express contract on the same subject.  
Zadrozny v. City Colleges
 of Chicago
, 220 Ill. App. 3d 290, 581 N.E.2d 44 (1991); 
Stone v. City of Arcola
, 181 Ill. App. 3d 513, 536 N.E.2d 1329 (1989);  
Gadsby v. Health Insurance  Administration Inc.
, 168 Ill. App. 3d 460, 522 N.E.2d 865 (1988);  
Board of Directors of Carriage Way Property Owners Ass'n v. Western National Bank
, 139 Ill. App. 3d 542, 487 N.E.2d 974 (1985); 
Industrial Lift Truck Service Corp. v. Mitsubishi International Corp.
, 104 Ill. App. 3d 357, 432 N.E.2d 999 (1982).

In the case 
sub judice
 there are three express contracts in the form of the releases signed by Maness which expressly relieve defendants from liability for all negligent and grossly negligent acts.  These express contracts negate the existence of any implied in fact contract.  We reject plaintiff's contention that the alleged implied in fact contract merely supplements the express written contracts.  Plaintiff's interpretation, that defendants impliedly agreed to provide Maness with medical care and to be responsible for the failure to do so, is directly contrary to the express terms of the written releases, which indicate defendants' intention to be free from all responsibility for any harm that might come to Maness in connection with the race.  Allowing this cause of action to stand would enable plaintiff to sue for damages on an implied duty when that very duty had been expressly waived by Maness.  Plaintiff cannot resort to quasi-contractual theories to shift Maness' contractually assumed risk of injury or death resulting from defendants' negligence or gross negligence.  
Industrial Lift Truck Service Corp.
 v. Mitsubishi International Corp.
, 104 Ill. App. 3d 357, 432 N.E.2d 999 (1982).

Plaintiff makes three arguments as to why defendants should not be able to rely on the releases signed by Maness.  We reject all three.  Plaintiff first argues that defendants cannot avail themselves of the benefit of the releases because they did not perform their obligations under the contract.  This argument is not supported by the record.  Maness released defendants from all liability for injury or death resulting from defendants' negligence or otherwise in exchange for defendants' permission to enter the restricted areas and participate in the stock car races.  Defendants fulfilled their contractual obligations by allowing Maness to enter the restricted areas and participate in the July 10, 1993, race and therefore are entitled to enforce Maness' release.

Plaintiff's second argument is that the foreseeability rule espoused in 
Simpson v. Byron Dragway, Inc.
, 210 Ill. App. 3d 639, 569 N.E.2d 579 (1991), prevents defendants from using the releases as a defense.  We have already rejected this argument above.

Plaintiff's third argument is that the doctrine of equitable estoppel bars defendants use of the releases.  Estoppel must be pled to be available (
Estes Co. of Bettendorf v. Employers Mutual Casualty Co.
, 79 Ill. 2d 228, 402 N.E.2d 613 (1980); 
Meier v. Aetna Life & Casualty Standard Fire Insurance Co.
, 149 Ill. App. 3d 932, 500 N.E.2d 1096 (1986); 
Chicago Budget Rent-A-Car Corp. v. Maj
, 5 Ill. App. 3d 265, 282 N.E.2d 155 (1972)) and cannot be raised for the first time an appeal (
People ex rel. Skinner v. Graham
, 170 Ill. App. 3d 417, 524 N.E.2d 642 (1988)).  
Plaintiff did not plead estoppel below.  Indeed, plaintiff relies on several facts that were never pled, such as "defendants knew that they would not send assistance to decedent that"; "defendants knew decedent would rely on them to provide emergency medical assistance in the event of injury or illness"; and "decedent signed the releases because he believed the defendants would send emergency medical assistance," to support her claim of equitable estoppel.  A required element of equitable estoppel is that the party against whom the estoppel is alleged must have had knowledge at the time the representations were made that the representations were untrue.  
Vaughn v. Speaker
, 126 Ill. 2d 150, 162, 533 N.E.2d 885, 890 (1988).  Yet, there is  no allegation in the second amended complaint that defendants knew that they would not send aid to Maness that night.  

We find that the trial court correctly dismissed count III as the three express written contracts entered into between Maness and defendants negate the existence of any implied contract and release defendants from any liability to plaintiff.    

Finally, plaintiff contends that the trial court erred in dismissing count IV, which pled a cause of action for intentionally withholding medical assistance.  We disagree.

Count IV is little more than a restatement of plaintiff's previously dismissed negligence count with the addition of the word "intentionally."  The mere addition of the words "intentionally" or "wilfully and wantonly" to the factual allegations used in plaintiff's negligence claim is insufficient to support a cause of action for intentional tort.  
Harkcom v. East Texas Motor Freight Lines, Inc.
, 104 Ill. App. 3d 780, 433 N.E.2d 291 (1982);  
Holtz v. Amax Zinc Co.
, 165 Ill. App. 3d 578, 519 N.E.2d 54 (1988).  Conclusory allegations or mere characterizations of alleged acts as intentional or wilful and wanton are insufficient.  
Dowd & Dowd, Ltd. v. Gleason
, 284 Ill. App. 3d 915, 672 N.E.2d 854 (1996); 
Winfrey v. Chicago Park District
, 274 Ill. App. 3d 939, 654 N.E.2d 508 (1995).

Furthermore, in order to state a claim for intentional misconduct the plaintiff must allege that the defendant committed the act with the intent to cause harm or with "substantial certainty" that harm would result.  
Wells v. I F R Engineering Co.
, 247 Ill. App. 3d 43, 617 N.E.2d 204 (1993).  Plaintiff failed to allege either that defendants intended to harm Maness or that defendants acted with "substantial certainty" that harm would result.  The only intentional act alleged is the intentional withholding of medical care.  It is simply not enough to allege that defendants intentionally failed to stop the race and dispatch emergency medical personnel and intentionally failed to send a tow truck.  
Wells
, 247 Ill. App. 3d at 45-46, 617 N.E.2d at 205.  Plaintiff must also allege defendants' intention to harm Maness.  She did not.  

The two cases relied on by plaintiff, 
Siemieniec v. Lutheran General Hospital
, 117 Ill. 2d 230, 512 N.E.2d 691 (1987) and 
Sutton v. Overcash
, 251 Ill. App. 3d 737, 623 N.E.2d 820 (1993), are inapposite as they address the proper measure of damages in a tort action, not the intent element required to state a cause of action for intentional tort.  We find that the trial court did not err in dismissing count IV for failure to state a cause of action.

Accordingly for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CERDA, P.J., and SOUTH, J., concur.