WADDILL PLATT, Plaintiff-Appellant, v. GATEWAY INTERNATIONAL MOTORSPORTS CORPORATION *et al.*, Defendants-Appellees.

Fifth District   No. 5—03—0472

Opinion filed August 6, 2004.

Georgiann Oliver, of Donovan, Rose, Nester & Joley, P.C., of Belleville, for appellees Fred A. Grueber, Miller Industries, and Miller Industries Towing Equipment, Inc.

Michael J. Bedesky, of Reed, Armstrong, Gorman, Mudge & Morrissey, P.C., of Edwardsville, for appellees Gateway International Motorsports Corporation and Championship Auto Racing Teams, Inc.

JUSTICE HOPKINS delivered the opinion of the court:

The plaintiff, Waddill Platt, brought this personal injury action in the circuit court of Madison County, charging the defendants, Gateway International Motorsports Corp., Fred A. Grueber, Miller Industries, Miller Industries Towing Equipment, Inc., and Championship Auto Racing Teams, Inc., with negligence and willful and wanton conduct. With regard to the plaintiff's allegations of negligence, the circuit court granted a summary judgment for the defendants because the plaintiff had signed an agreement exculpating the defendants from liability. Pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), this court allowed the plaintiff's interlocutory appeal.

On appeal, the plaintiff contends that the exculpatory agreement does not bar his negligence allegations against the defendants because the term "event" in the exculpatory agreement was ambiguous and because the parties did not contemplate the risk involved.

We affirm.

## FACTS

As a Marlboro Team Penski public relations employee of Philip Morris, the plaintiff attended various stock and Indy car races, including Championship Auto Racing Teams, Inc. (CART), events. At the CART racing event held at Gateway International Race Track (Gateway) in May 1998, the plaintiff was responsible for hospitality services, *i.e.*, managing hotel rooms for VIP guests, monitoring track signs, feeding the media, and administering cigarette sales incentives. The plaintiff's base of operations was a Marlboro media trailer located on the infield, where the plaintiff was required to cross the racetrack to enter or exit.

On May 22, 1998, prior to qualifying rounds, multiple tow trucks traveling from 55 to 70 miles per hour circled the Gateway racetrack to dry it, a standard postrain practice in the auto racing industry. After being signaled to cross by a Gateway employee, the plaintiff exited the infield by driving across the racetrack and collided with a tow truck driven by the defendant Fred Grueber.

Prior to the collision, on January 13, 1998, the plaintiff executed a "1998 Championship Auto Racing Teams, Inc.[,] ANNUAL RELEASE

AND WAIVER OF LIABILITY, ASSUMPTION OF RISK[,] AND INDEMNITY AGREEMENT," which provided:

"IN CONSIDERATION of my being granted a membership, license[,] and/or competition privileges in Championship Auto Racing Teams, Inc. (hereinafter known as CART)[,] sanctioned EVENT(S)[ ] as a[ ] CART and/or American Racing Series, Inc., participant or being permitted to compete, practice, officiate, observe, work for, or for any purpose participate in any capacity in the EVENT(S) for and during the calendar year of 1998[ ] or being permitted to enter for any purpose or in any capacity any RESTRICTED AREAS (defined as any area requiring special authorization, credentials, or permission to enter any area to which admission by the general public is restricted or prohibited), I *** ***

2. HEREBY RELEASE, WAIVE, DISCHARGE, AND COVENANT NOT TO SUE Championship Auto Racing Teams, Inc., American Racing Series, Inc., the promoters, organizers, participants, racing associations, sanctioning organizations or any subdivision thereof, track operators, track owners, *** any persons in any RESTRICTED AREAS, promoters, sponsors, advertisers, [and] owners, lessees, designers[,] and constructors of premises used to conduct the EVENT(S), *** all for the purpose herein referred to as the RELEASEES, FROM ALL LIABILITY TO ME *** FOR ANY AND ALL LOSS OR DAMAGE[ ] AND ANY CLAIM OR DEMANDS THEREFOR ON ACCOUNT OF INJURY TO ME OR MY PROPERTY OR RESULTING IN MY DEATH ARISING OUT OF OR RELATED TO THE EVENT(S) from any cause whatsoever, including, without limitation, the failure of anyone to enforce rules and regulations, the failure to make inspections, the condition of any portion of the track or premises, defective products, and any act or omission of the RELEASEES or any of them or any other act WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE AND WHETHER OR NOT OCCURRING IN RESTRICTED AREAS.
* * *

6. HEREBY AGREE that this ANNUAL RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK[,] AND INDEMNITY AGREEMENT extends to all acts of negligence by the RELEASEES *** and is intended to be as broad and inclusive as is permitted by the laws of the Municipality, Province, State[,] and/or Country in which the EVENT(S) is/are conducted ***."

On October 15, 1999, the plaintiff filed a second amended complaint, alleging that the defendant Gateway International Motorsports Corp. negligently constructed and maintained its premises; that the defendant Fred Grueber and his employer, Miller Industries and

Miller Industries Towing Equipment, Inc., negligently operated the tow truck that collided with the plaintiff's automobile; and that the defendant Championship Auto Racing Teams, Inc., negligently operated, controlled, and maintained the racetrack. On June 16, 2000, the plaintiff amended his second amended complaint, adding allegations of willful and wanton conduct.

On July 14, 2000, the circuit court granted a summary judgment in favor of the defendants with regard to the plaintiff's allegations of negligence. On July 18, 2003, the circuit court entered an order finding that the July 14, 2000, ruling involved a question of law regarding which there was substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation. The circuit court certified the following question of law to this court:

"Whether the exculpatory agreement signed by Plaintiff was properly interpreted and construed by the trial court to bar Plaintiff's negligence claims under the facts involved in this case."

On August 21, 2003, this court granted the plaintiff's petition for leave to appeal pursuant to Rule 308 (155 Ill. 2d R. 308).

## ANALYSIS

The plaintiff argues that the exculpatory agreement fails to bar his negligence action against the defendants because a race was not in progress at the time of his injury and his injury resulted from an occurrence unrelated to an "event," a term which is undefined, ambiguous, and thereby construed in his favor. We disagree.

A summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, show that there is no genuine issue on any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998). The circuit court's decision to grant a summary judgment presents a question of law and is subject to *de novo* review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

The primary objective in construing a contract is to give effect to the intention of the parties involved. *Schek v. Chicago Transit Authority*, 42 Ill. 2d 362, 364 (1969). The intention of the parties must be ascertained from the language employed in the instrument. *Joseph v. Lake Michigan Mortgage Co.*, 106 Ill. App. 3d 988, 991 (1982). A contract is to be construed as a whole, giving meaning and effect to every provision thereof, if possible, because it is presumed that every clause in the contract was inserted deliberately and for a purpose. *Martindell v. Lake Shore National Bank*, 15 Ill. 2d 272, 283 (1958).

Where the contract is clear, its interpretation is a question of law to be determined only from the terms of the contract. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288 (1990).

A contract is ambiguous where the language employed is susceptible to more than one reasonable meaning or obscure in meaning through indefiniteness of expression. *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882, 888 (1995). A contract is not rendered ambiguous merely because the parties do not agree on its meaning. *Joseph*, 106 Ill. App. 3d at 991. Whether a contract is ambiguous is also a question of law. *Quake Construction, Inc.*, 141 Ill. 2d at 288.

An exculpatory agreement constitutes an express assumption of risk wherein one party consents to relieve another party of a particular obligation. *Simpson v. Byron Dragway, Inc.*, 210 Ill. App. 3d 639, 647 (1991). Although exculpatory agreements are not favored and will be strictly construed against the benefiting party (*Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 395 (1986)), parties may allocate the risk of negligence as they see fit, and exculpatory clauses do not violate public policy as a matter of law. *Reuben H. Donnelley Corp. v. Krasny Supply Co.*, 227 Ill. App. 3d 414, 419 (1991).

■ An exculpatory clause, to be valid and enforceable, must contain clear, explicit, and unequivocal language referencing the type of activity, circumstance, or situation that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care. *Garrison v. Combined Fitness Centre, Ltd.*, 201 Ill. App. 3d 581, 585 (1990). Exculpatory agreements have been upheld in the auto racing context where an injured driver or participant has brought suit against an owner or operator of a raceway. *Schlessman v. Henson*, 83 Ill. 2d 82, 86 (1980); *Maness v. Santa Fe Park Enterprises, Inc.*, 298 Ill. App. 3d 1014, 1019-20 (1998); *Morrow v. Auto Championship Racing Ass'n*, 8 Ill. App. 3d 682, 685-86 (1972).

■ In the present case, we accept the plaintiff's definition of "event" as "any one of the contests in a program of sports" (see Webster's Third New International Dictionary 788 (2002)) and conclude that the term "event" is not ambiguous but clear and explicit. The contract as a whole was broad and inclusive and barred liability for negligence claims "arising out of or related to the event(s)," caused not only by "participants, racing associations, *** car owners, drivers, [and] pit crews" but also by "promoters, organizers, [and] any persons in any restricted areas." The time trials qualified as an event as provided for in the exculpatory agreement. The tow trucks were preparing for the event by driving around the racetrack, and therefore, the plaintiff's resulting negligence claim arose out of or was related to an event. The plaintiff's argument, that the exculpatory agreement

does not apply because no race was in progress, is untenable. See *Maness*, 298 Ill. App. 3d at 1021 (the court rejected the plaintiff's argument that the releases did not apply because the decedent was no longer participating in the event at the time of the defendants' alleged delay in sending medical assistance). The language of the exculpatory agreement is clear and explicit and bars the plaintiff's negligence claim for injuries he sustained while the tow trucks prepared the racetrack for the qualifying rounds.

The plaintiff also contends that the exculpatory agreement fails to bar his negligence action because the parties did not contemplate the risk involved. The plaintiff cites *Simpson*, 210 Ill. App. 3d 639, where the appellate court held that a summary judgment based upon the exculpatory agreement was improper because the decedent's death, during a race when the decedent collided with a deer, was not the type of risk that ordinarily accompanied the sport of racing.

The foreseeability of a danger is an important element of the risk a party assumes and will often define the scope of an exculpatory agreement. *Simpson*, 210 Ill. App. 3d at 647. The plaintiff must be put on notice of the range of dangers for which he assumes the risk of injury, enabling him to minimize the risks by exercising a greater degree of caution. *Garrison*, 201 Ill. App. 3d at 585. The precise occurrence that results in injury need not have been contemplated by the parties at the time they entered into the contract. *Schlessman*, 83 Ill. 2d at 86. It should only appear that the injury falls within the scope of possible dangers ordinarily accompanying the activity and, thus, reasonably contemplated by the plaintiff. *Garrison*, 201 Ill. App. 3d at 585.

In *Schlessman*, the plaintiff signed a broad agreement releasing the defendant from " 'all liability' " to him " 'whether caused by the negligence of Releasees or otherwise' " while he was in the restricted area. *Schlessman*, 83 Ill. 2d at 85. While the plaintiff raced on the defendant's racetrack, a portion of the upper track embankment collapsed, causing the plaintiff's car to crash. *Schlessman*, 83 Ill. 2d at 84. The plaintiff argued that the collapse of the track embankment culminating in his crash was outside the scope of his expectations and the sweeping language in the release. *Schlessman*, 83 Ill. 2d at 85. In holding the plaintiff's negligence claim against the track owner barred by the release, the court stated:

> "The racing of automobiles at a high speed in limited areas gives rise to various situations which have resulted in the death or injury to drivers, mechanics[,] and spectators at these events. These accidents may occur because of factors involving mechanical failures, defective design of guardrails, driver error[,] or weather conditions

affecting driving surfaces. In sum, a myriad of factors, which are either obvious or unknown, may singly or in combination result in unexpected and freakish racing accidents. *** The parties may not have contemplated the precise occurrence which resulted in plaintiff's accident, but this does not render the exculpatory clause inoperable. In adopting the broad language employed in the agreement, it seems reasonable to conclude that the parties contemplated the similarly broad range of accidents which occur in auto racing." *Schlessman*, 83 Ill. 2d at 86.

In *Maness*, the plaintiff's decedent suffered a fatal heart attack while participating in a stock car race at the defendants' racetrack. *Maness*, 298 Ill. App. 3d at 1016. On appeal, the plaintiff argued that the defendants' delay in providing medical treatment was not the type of risk that ordinarily accompanied auto racing and therefore was not covered by the signed exculpatory agreements releasing the defendants from " 'any and all loss or damage[ ] and any claim or demands therefore [*sic*] on account of the "releasees" or otherwise' " and from " 'all liability for personal injury or property damage whether arising from claims of negligence, gross negligence, or any other cause.' " *Maness*, 298 Ill. App. 3d at 1020. The court held that the risk of requiring medical attention during a race was one that ordinarily accompanied the dangerous sport of auto racing and the fact that the decedent did not foresee the exact circumstances necessitating prompt medical assistance was irrelevant. *Maness*, 298 Ill. App. 3d at 1020.

We find that the risk involved in this case was within the contemplation of the parties when they executed the exculpatory agreement. The record reveals that the plaintiff had been involved in automobile racing for years and that he had signed similar agreements prior to entering restricted areas of the racetracks. See *Koch v. Spalding*, 174 Ill. App. 3d 692, 697 (1988). The parties were aware that the common practice to dry a track for auto racing consisted of tow trucks driving at high speeds around the racetrack, and the parties were aware that the plaintiff must cross the racetrack to reach his base of operations. By adopting the broad language employed in the exculpatory agreement, the parties contemplated the similarly broad range of accidents that occur in auto racing. See *Schlessman*, 83 Ill. 2d at 86. The plaintiff's injury fell within the scope of possible dangers ordinarily accompanying auto racing activities and, thus, was reasonably contemplated by the plaintiff. See *Garrison*, 201 Ill. App. 3d at 585. Although the parties may not have contemplated the precise occurrence that resulted in the plaintiff's accident, we do not render the exculpatory agreement inoperable. See *Schlessman*, 83 Ill. 2d at 86. We therefore affirm the circuit court's decision granting a summary

judgment in favor of the defendants on the plaintiff's negligence claims.

## CONCLUSION

For the foregoing reasons, the decision of the circuit court of Madison County granting a summary judgment in favor of the defendants on the plaintiff's negligence claims is affirmed.

Certified question answered; judgment affirmed.

WELCH and GOLDENHERSH, JJ., concur.