JOSEPH CASACCIO *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* JAMES S. HABEL *et al.*, Defendants-Appellees and Cross-Appellants,— (GLENVIEW STATE BANK, as Trustee, Defendant.)

(No. 58131;

First District (4th Division)—September 26, 1973.

N. A. Giambalvo and William Thomas Braithwaite, both of Chicago, (Boodell, Sears, Sugrue, Giambalvo & Crowley, of counsel,) for appellants.

Robert I. Briskman, of Chicago, (Landesman & Schwartz, of counsel,) for appellees.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This action in equity was brought by Joseph and Geraldine Casaccio against James and Marian Habel and James S. Habel & Associates, Inc., and the Glenview State Bank, as trustee under Trust No. 687, in the Circuit Court of Cook County to construe a deed as a mortgage, alleging fraud, abuse of civil process and usury. The court found that the Casaccios retained title to their home, but the Habels had an equitable mortgage in the amount of $14,000, found the loan not to be usurious, and found Habel's loan costs and expenses for which he was entitled to be reimbursed were as follows: $1,830.87 for the period ending November 12, 1969, the effective date of Habel's November statement to Casaccio for this amount; $225 per month from November 12, 1969, to June 12, 1970, which is Casaccio's half-share of the $450 monthly interest at 18%, and $300 per month since June 12, 1970, which is Casaccio's half-share of the $600 monthly interest at 24%.

■■ The only issue on review raised by the Casaccios is whether the usury laws of the State of Illinois are applicable when there has been no agreement as to a particular rate of interest and a lender passes along to a borrower an interest rate which is in excess of the statutory maximum and which he, in turn, had paid to a third party. The defendants, the Habels, filed a cross-appeal in which they requested that the court specifically enumerate defendants' costs and expenses or, in the alternative, remand with directions to hold a hearing to determine the costs and expenses of the defendants.

Peter Costello and Joseph Casaccio, both employees of Carmae Realty, borrowed $27,000 from Colonial Bank & Trust Co., and assigned the beneficial interests in their homes as security. When the loan became due on February 27, 1969, they had been unsuccessful in refinancing it, and the bank was threatening to foreclose on their homes. Casaccio and Costello sought the help of James Habel, who was in the business of buying, selling and managing real estate. Carmae Realty had acted as broker in a number of transactions involving Habel & Associates, Inc.

After Habel was unable to find a lender who would refinance the loan, Habel, Casaccio and Costello worked out a deal in which titles to the Casaccio and Costello properties were conveyed to Trust No. 687 of the Glenview State Bank, of which Habel and his wife, Marian, were the

beneficiaries. It was agreed that Casaccio and his family would continue to live in their home without payment of rent and would make all payments of principal and interest on the existing mortgage, pay all taxes, assessments, insurance and expenses of repair and maintenance. Habel also executed real estate contracts with Casaccio and Costello in which he agreed to sell the properties back to them a year later.

The Habels signed a 30-day promissory note at Parkway Bank for $30,000 and gave as collateral an assignment of their beneficial interest in Trust No. 687. After paying a $40 service charge on the loan, Habel purchased a $27,946.50 cashier's check, which he endorsed to Casaccio and Costello and which they, in turn, endorsed to Colonial Bank to pay that debt. Habel then wrote a check to Casaccio and Costello for the balance of the loan proceeds, $2,013.50.

The $30,000 was borrowed from Parkway at 8.5% interest, and on May 16, Habel consolidated the $30,000 loan with three others he had at Parkway into one $117,000 promissory note for eleven days at 9% interest. In order to repay that loan, Habel got a $122,000 loan from Lake City Equity Finance Corporation for one year at 18% interest. As collateral he gave assignments of the beneficial interests in various land trusts including No. 687. Even though Lake City loaned the $122,000 to Habel individually, it was not concerned about the Illinois usury laws because Habel had given an affidavit stating the loan was for a business purpose, and the loan application indicated it was for "working capital."

Sometime in June, 1969, Habel told Casaccio that he "had to transfer the loan out" from Parkway Bank, but he did not tell Casaccio he was borrowing at the rate of 18%.

Only two statements showing the loan costs and expenses were sent to Casaccio, one on September 2, 1969, and the second on November 19, 1969. The September 2 statement included an amount of $601.72 for service and filing fee at Lake City and a $1,237.92 amount for interest charges, for a total of $1,839.64.

Casaccio made no payment and the November 19 statement carried the total of $1,839.64 forward and also included a "service and filing fee" at the Glenview State Bank and three $450 monthly interest charges from Lake City (the 18% annual rate times $30,000 equals $450 per month).

Habel's $122,000 note at Lake City was due June 11, 1970, but was not paid at maturity. Under the terms of the note, his default increased the interest rate to 24%, or $600 per month on $30,000.

Casaccio had reimbursed Habel for interest of $212.50 on the original note at Parkway and testified that he also paid Habel about $1,700 of the $2,013.50 which remained after payment of Parkway Bank's service

charge and the payment of the cashier's check. In addition, Casaccio also testified he took no commission on a sale of property in order to enable Habel to benefit from the closing of a real estate transaction. Therefore, in June of 1969, when Habel told Casaccio that the $30,000 Parkway loan had been transferred out, and another $600 was due, Casaccio concluded he had already paid enough and did not pay any interest charges based on the 18% rate being charged by Lake City.

Habel denied receiving the $1,700 and denied any knowledge of Casaccio's commission on the other real estate transaction.

In October Casaccio received a letter from Habel's lawyer informing him he was "subject to possible eviction" if "monthly payments due and owing" were not paid. In November Casaccio received another letter threatening to institute action to take over possession of the property if the amount claimed was not paid. On January 2, 1970, Habel sent Casaccio a Landlord's Five Days' Notice claiming rent due and a Notice of Termination of Tenancy purporting to require Casaccio to surrender possession of his home a month later. On January 30, 1970, the Habels and Glenview Bank, as trustee under Trust No. 687, led suit against the Casaccios for forcible detainer and rent.

The Casaccios filed this suit on March 11, 1970, and pursuant to stipulation the court below ordered the defendants not to proceed further with the forcible detainer suit.

The Casaccios contend the court erred in ruling there was no usury and argue the penalties under section 6 of the Interest Act of 1879 (Ill. Rev. Stat. 1971, ch. 74, par. 6) should be assessed against the Habels. This would result in the Habels owing them a total of $12,962.27.

After reading the record we conclude there was no usury because there was no agreement to pay interest above the legal rate. Casaccio asked Habel to find a lender who would refinance his debt, but when Habel checked a number of savings and loan associations without success, Casaccio then got the loan from Habel by conveying his house to a trust of which the Habels were the beneficial owners. No rate of interest was specified, but since it must be presumed they intended to enter into a legal contract, it also must be presumed the legal rate of interest was contemplated which at that time was 5%. (Ill. Rev. Stat. 1971, ch. 74, par. 1.) Although it was contemplated that Habel would in turn borrow money from another source using his own credit which had been augmented by placing title to the Casaccios' home in Trust No. 687, the financial difficulties which forced him to borrow from a high interest lender were not part of the agreement. Section 6 of the Interest Act (Ill. Rev. Stat. 1971, ch. 74, par. 6), the penalty statute relating to usury, provides that one must "knowingly" contract for an unlawful

rate of interest, and the evidence does not show the parties agreed on a rate of interest in excess of the statutory maximum.

■■ It should also be noted the Habels cannot be liable under the usury laws because the court expressly found they did not intend to make a profit on the transaction, but merely passed on the rate of interest they were paying to a third party. *Shirley v. Spencer*, (1847) 9 Ill. 583.

We hold the trial court was correct in determining there was no usury, and we also hold the Casaocios are liable only for the maximum statutory interest rate in effect at the time of the loan plus any reasonable expenses incurred by the Habels. The excessive amount of interest is not to be construed as expenses such as title charges, commissions or recording fees, if any. Habel must bear the burden of the high interest rates because he entered into such an agreement, while the Casaccios were not a party to such agreement.

For the foregoing reasons, the decree of the Circuit Court is affirmed in part and reversed in part and remanded.

Affirmed in part and reversed in part and remanded.

BURMAN, P. J., and ADESKO, J., concur.