FIFTH DIVISION
March 19, 2010

No. 1-09-0262

| | | |
|---|---|---|
| INLAND BANK AND TRUST, f/k/a | ) | Appeal from the |
| WESTBANK, an Illinois Banking Corporation, | ) | Circuit Court |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 07 CH 10840 |
| | ) | |
| CARLTON W. KNIGHT, CHICAGO TITLE | ) | |
| LAND TRUST CO., as Successor Trustee to | ) | |
| N.A.B. Bank, as Trustee under Trust Agreement | ) | |
| No. 2-107-0, UNITED STATES OF AMERICA, | ) | |
| UNKNOWN BENEFICIARIES OF CHICAGO | ) | |
| LAND TRUST COMPANY TRUST NO. 2-107-0, | ) | |
| CITY OF CHICAGO, a Municipal Corporation, | ) | |
| UNKNOWN OWNERS, AND NONRECORD | ) | |
| CLAIMANTS, | ) | |
| | ) | |
| Defendants-Appellants. | ) | Honorable |
| | ) | Darryl B. Simko, |
| | ) | Judge Presiding. |

JUSTICE LAVIN delivered the opinion of the court:

This current appeal concerns a mortgage foreclosure action brought by plaintiff-appellee

Inland Bank and Trust (Inland) on an apartment complex. Defendants-appellants appeal an order

by the circuit court granting Inland's motion to strike defendants' affirmative defenses to the

foreclosure complaint and a counterclaim alleging a violation of the Interest Act (815 ILCS 205/1

*et seq.* (West 2006)).

BACKGROUND

In 2003, Carlton W. Knight refinanced a mortgage loan through Westbank, Inland's

1-09-0262

predecessor, on a 3-building, 41-unit multifamily apartment complex in Harvey, Illinois. Westbank loaned Knight $1,120,000, which was secured by a mortgage on the real estate. The note providing the terms of the loan (Note) contained a number of provisions dictating various interest rates. The Note first provided for a variable interest rate as the stated interest rate:

> "VARIABLE INTEREST RATE. The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime (the 'Index'). The Index is not necessarily the lowest rate charge by Lender on its loans. *** The Index currently is 4.000% per annum. The Interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 2.250 percentage points over the Index, rounded to the nearest 0.125 percent, resulting in a rate of 6.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law."

A provision identified as "LATE CHARGE" stated that "[i]f a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment." Finally, the Note also provided for an interest rate after default, which is the primary provision at issue here:

> "INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, Lender at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 7.250 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law."

Eventually, the loan went into default and Inland sued to foreclose on April 19, 2007. Knight

2

filed an "Amended Answer to the Foreclosure Complaint, Affirmative Defenses and Counterclaim" which alleged, *inter alia*, that the interest after default provision of the Note violated section 4.1a(f) of the Interest Act (815 ILCS 205/4.1a(f) (West 2006)), section 2F of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2F (West 2006)), and constituted an unenforceable penalty.

Inland moved to strike Knight's affirmative defenses and dismiss the counterclaim. It argued that no provisions in the Note were in violation of any law. The parties fully briefed and argued the motion at length before the circuit court and on November 18, 2008, the circuit court granted Inland's motion. Knight filed a motion to reconsider but it was ultimately denied. Defendants timely appeal.

ANALYSIS

On appeal, defendants first contend that the Note's "interest after default" provision violates section 4.1a(f) of the Interest Act.

The issues in the instant case involve questions of law and statutory interpretation and therefore, the standard of review is *de novo*. People v. Hall, 195 Ill. 2d 1, 21 (2000). Section 4.1a(f) of the Interest Act provides that:

> "[I]f the agreement governing the loan so provides, for each installment in default for a period of not less than 10 days, a charge in an amount not in excess of 5% of such loan installment. Only one delinquency charge may be collected on any such loan installment regardless of the period during which it remains in default." 815 ILCS 205/4.1a(f) (West 2006).

Section 4 of the Interest Act provides, in pertinent part, that it is lawful for a state bank to receive or contract to collect interest and charges at any rate agreed upon with business loans secured by a mortgage on real estate. 815 ILCS 205/4(1)(l) (West 2006).

Both parties cite U.S. Bank National Ass'n v. Clark, 216 Ill. 2d 334 (2005). Knight, the borrower, argues that the Note's default interest provision violates section 4.1a(f). Inland, on the other hand, argues that Clark actually supports its position. Not to be unduly contrarian, but we find that Clark provides little support to either party here. The supreme court in Clark addressed the juxtaposition that then existed between section 4 and section 4.1a of the Interest Act. The supreme court noted that section 4, after being amended in 1981 and 1982, permitted the receipt of any rate or amount of interest or compensation on any real estate mortgage. 815 ILCS 205/4(1)(l) (West 2006). Clark noted that section 4.1a restricted the same "broad category of costs" that section 4 addressed to 3% when a loan's interest rate exceeded 8%. Clark, 216 Ill. 2d at 348; see 815 ILCS 205/4.1a (West 2006). After a lengthy discussion, the supreme court concluded that the 1981 and 1982 amendments to section 4 implicitly repealed section 4.1a's limitations on noninterest charges. Clark, 216 Ill. 2d at 349. The supreme court then found that a 1992 amendment to section 4.1a (adding section 4.1a(f), the section at issue here), did not represent a reenactment of the limitations provided for in section 4.1a that had been implicitly repealed by the previous amendments.

The only conclusions from Clark that appear relevant to our consideration of this appeal are that section 4.1a(f) did not reenact the previously repealed limitations on interest and that section 4 permits the receipt of any rate or amount of interest on any real estate mortgage. The

gravamen of the issue here, however, is not which sections are in force but rather which section is applicable to the "interest after default" provision in the Note. On this more narrow point, defendants argue that section 4.1a(f) is applicable while Inland argues that section 4 applies.

We must first determine how default interest should be characterized before deciding what section of the Interest Act controls here. A default interest provision serves to protect mortgage lenders' expectations. A pertinent article in the Real Property, Probate & Trust Journal (cited by the parties during circuit court proceedings) offers a comprehensive explanation:

"Default interest provisions are designed to compensate the lender for a wide range of losses and risks, both those flowing from the particular defaulted loan and borrower and those from the pool of defaulted loans that the borrower has joined. Among other things, these losses include: the loss of regular contract interest income during the term of the loan; the opportunity costs of foregoing other investments during the default period; the need for regulated lenders to place additional money on reserve based on defaulted loans in their portfolio (which diverts money from income-producing investments); the possibility that the negative impact of a nonperforming loan on the lender's balance sheet could cause regulatory problems and make obtaining funding in the credit markets more expensive; and the additional internal administrative costs the lender must incur to monitor and otherwise deal with a defaulted loan." S. Bender & M. Madison, *The Enforceability of Default Interest in Real Estate Mortgages*, 43 Real Prop. Prob. & Tr. J. 199, 201-02 (2008).

In short, the article explains that default interest serves as a vehicle for liquidated damages as

opposed to penalties. Historically, Illinois courts have treated default interest in the same way. For example, in Chemical Bank v. American National Bank & Trust Co. of Chicago, 180 Ill. App. 3d 219 (1989), this court treated default interest provision as liquidated damages and not a penalty provision and found that such a provision was valid and enforceable. Cases dating back to 1873 have held similarly. See Baker v. Loves Park Savings & Loan Ass'n, 61 Ill. 2d 119, 127 (1975) (stating that "maker of a note may stipulate to pay a higher interest rate after maturity and the additional amount will not be considered a penalty but will be considered liquidated damages"); Downey v. Beach, 78 Ill. 53 (1875) (provision increasing interest on note upon maturity for unpaid portion was considered a penalty, but was in the form of liquidated damages and was enforceable); Bane v. Gridley, 67 Ill. 388, 390 (1873) (although increase rate of interest in consequence of nonpayment at maturity was identified as a "penalty," supreme court would treat it as "merely liquidated damages").

Defendants cite In re AE Hotel Venture, 321 B.R. 209 (Bankr. N.D. Ill. 2005) to support their point of view. There, the bankruptcy court held that a creditor was not entitled to postpetition default interest, finding that default interest was not "true interest" but a form of "late charge." In re AE Hotel Venture, 321 B.R. at 215-16. As a charge, it was subject to provisions within the Bankruptcy Code dealing with "charges." See 11 U.S.C. §506(b) (2000) Ultimately, the bankruptcy court found that the creditor would be entitled to default interest up to a "reasonable" level only if: (1) it had waived its right to standard late charges; or (2) the standard late charges were insufficient to compensate the creditor for the default. In re AE Hotel Venture, 321 B.R. at 216-17. In re AE Hotel Venture, however, is not binding precedent, for this court is

generally not bound by federal court decisions construing Illinois statutes that do not involve federal questions. SI Securities v. Bank of Edwardsville, 362 Ill. App. 3d 925, 932 (2005). Furthermore, In re AE Hotel Venture addressed default interest rates in the context of a bankruptcy proceeding and the Bankruptcy Code, not the Interest Act of Illinois, which further vitiates its persuasive value.

In our view, default interest serves to balance the risk of lending to a defaulted borrower whereas late charges are more akin to a one-time penalty for missing or delaying a scheduled payment. This distinction is significant because section 4.1a(f) appears to only deal with penalties, or more specifically, late payment penalties. Defendants assert that the "interest after default" provision in the Note is in fact a "delinquency charge" subject to the 5% limit contained in section 4.1a(f). We disagree. A close reading of section 4.1a(f) reveals that the limit of 5% is for "delinquency charges" on an "installment in default," and that such a charge may be charged only once for "any such loan installment." 815 ILCS 205/4.1a(f) (West 2006). Therefore, the section's language is clearly applicable only to provisions governing loan installments.

A single loan installment being in default is a far cry from an entire loan being in default. The late charge provision in the Note governed delinquency charges on installments in default whereas the default interest provision affected the stated interest rate of the Note itself. The default interest provision did not charge anything specific to particular missed payments or installments. As discussed, no language within section 4.1a(f) suggests applicability in any other context beyond loan installments and to read it otherwise would be an overly broad interpretation. Accordingly, we find the trial court did not err in holding that section 4.1a(f)'s

limit was inapplicable to the default interest provision.

Defendants next contend that the Note's "interest after default" provision constituted an unlawful penalty. Defendants argue that the increased interest rate upon default, "7.250 percent over the Index," is exorbitant and unlawful. We disagree.

As already discussed above, Illinois has generally treated default interest provisions as liquidated damages. Parties to a note "may stipulate to pay a higher interest rate after maturity and the additional amount will not be considered a penalty but will be considered liquidated damages." Baker, 61 Ill. 2d at 127. A liquidated damages clause, however, which operates as a penalty for nonperformance or as a threat to secure performance will not be enforced. Jameson Realty Group v. Kostiner, 351 Ill. App. 3d 416, 423 (2004). The clause will be enforced if the damages are "'reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.'" Penske Truck Leasing Co., L.P. v. Chemetco, Inc., 311 Ill. App. 3d 447, 454 (2000), quoting Restatement (Second) of Contracts §356 at 157 (1981).

Illinois has upheld liquidated damages clauses over a fairly wide range of values. From the previously cited cases, the supreme court in Baker upheld an increase from 6% to 7%. In Bane, the court upheld a provision in a promissory note which required the debtor to pay interest at the rate of 30% per annum after maturity. The supreme court in Walker v. Abt, 83 Ill. 226 (1876), upheld a provision in a note increasing the interest rate from 10% per annum to 20% per annum upon maturity of the note. While the relatively ancient cases of Bane and Walker predate

8

usury laws, they nevertheless provide support for our holding that provisions for higher interest in the Note are valid and enforceable. We find further support for our holding in the case of Casaccio v. Habel, 14 Ill. App. 3d 822 (1973). In Casaccio, Habel borrowed $122,000 at 18% interest but promised to pay interest at the rate of 24% in the event of a default. Upon default, Habel maintained that plaintiffs were liable for the interest payments because he was acting on their behalf when he entered into the loan transaction. This court disagreed and ultimately stated that "Habel must bear the burden of the high interest rates because he entered into such an agreement." Habel, 14 Ill. App. 3d at 826. Accordingly, this court affirmed the circuit court's judgment that Habel was liable for interest at the rate of 24% per annum from the date of default. The default interest rate in the instant case was approximately 11%. This value, which was negotiated to and agreed upon by both parties, does not appear unreasonable in light of the loss suffered by Inland caused by Knight's default, the difficulties of proving the losses, and the Illinois courts' holdings in the aforementioned cases. Accordingly, we find that the default interest provision of the Note did not constitute an unlawful penalty.

Finally, defendants contend that the court erred in denying their motion requesting that an accounting be undertaken pursuant to section 15-1504(e)(1) of the Code of Civil Procedure. 735 ILCS 5/15-1504(e)(1) (West 2006). This section provides: "The request for foreclosure is deemed and construed to mean that the plaintiff requests that: (1) an accounting may be taken under the direction of the court of the amounts due and owing to the plaintiff." 735 ILCS 5/15-1504(e)(1) (West 2006).

In the underlying action, Knight is a defendant in the foreclosure action and Inland is the

9

plaintiff. Section 15-1504(e)(1) is a subsection specifically addressing a plaintiff's rights. Moreover, section 15-1504(e) references "plaintiff" and "defendant" a number of times in other subsections and ascribes specific responsibilities, duties, and rights to each party. In light of this, we believe that the legislature differentiated the parties purposefully and did not intend for "plaintiff" to actually mean "plaintiff and defendant." Furthermore, the section states that an accounting is not necessarily mandatory and only "may be taken under the direction of the court." 735 ILCS 5/15-1504(e)(1) (West 2006). Accordingly, the trial court did not err here in denying a motion requesting an accounting which was filed by a defendant.

     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

     Affirmed.

     FITZGERALD SMITH and HOWSE, JJ., concur.

1-09-0262

| | |
|---|---|
| Please Use Following Form:<br><br>Complete TITLE of Case | INLAND BANK AND TRUST, f/k/a WESTBANK, an Illinois Banking Corporation,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>CARLTON W. KNIGHT, CHICAGO TITLE LAND TRUST CO., as Successor Trustee to N.A.B. Bank, as Trustee under Trust Agreement No. 2-107-0, UNITED STATES OF AMERICA, UNKNOWN BENEFICIARIES OF CHICAGO LAND TRUST CO. TRUST NO. 2-107-0, CITY OF CHICAGO, a Municipal Corporation, UNKNOWN OWNERS, AND NONRECORD CLAIMANTS,<br><br>Defendants-Appellants. |
| Docket No.<br><br>COURT<br><br>Opinion Filed | Nos. 1-09-0262<br>Appellate Court of Illinois<br>First District, FIFTH Division<br><br>March 19, 2010<br>(Give month, day and year) |
| JUSTICES | JUSTICE LAVIN delivered the opinion of the court:<br><br>Fitzgerald Smith and Howse, JJ.,          concur [s]<br><br>dissent[s] |
| APPEAL from the Circuit Ct. of Cook County, | Lower Court and Trial Judge(s) in form indicated in the margin:<br><br>The Honorable ~~Darryl B. Simko,~~ , Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Attorney for Defendants-**Appellants**:  Cook, Revak & Associates, Ltd.<br>Carlton W. Knight, et al.             7411 S. Stony Island Ave.<br>Chicago, IL 60649<br>Phone 773.752.2000<br><br>Attorneys for **Plaintiff-Appellee:**  Carey, Filter, White & Boland<br>Inland Bank and Trust             33 W. Jackson Blvd., 5th floor.<br>Chicago, IL 60604<br>Phone: 312.939-4300 |