# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Hannafan & Hannafan, Ltd. v. Bloom*, 2011 IL App (1st) 110722

---

| | |
|---|---|
| Appellate Court Caption | HANNAFAN AND HANNAFAN, LTD., Plaintiff-Appellant, v. ERIC A. BLOOM, SENTINEL INVESTMENT GROUP, INC., SENTINEL FINANCIAL SERVICES, INC., SENTINEL MANAGEMENT INTERNATIONAL, INC., FOUNTAINHEAD INVESTMENTS, INC., EB TRUST 2005 and ERIC A. BLOOM LIVING TRUST, Defendants (Cotsirilos, Tighe and Streicker, Ltd., Third-Party Citation Respondent-Appellee). |
| District & No. | First District, Second Division<br>Docket No. 1-11-0722 |
| Filed | November 1, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where plaintiff obtained a judgment against defendant and then moved to compel third-party citation respondent, a law firm, to turn over money defendant paid to the firm for legal representation, the trial court properly granted respondent's motion for an adverse claim to the funds based on the argument that the funds were paid to respondent pursuant to an advance payment retainer agreement under which the funds became respondent's property, since the agreement substantially complied with the requirements of *Dowling,* the Illinois Supreme Court decision recognizing such retainers. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 08-L-00981, 08-L-02230 cons.; the Hon. Alexander P. White, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Hannafan & Hannafan, Ltd., of Chicago (Blake T. Hannafan and James A. McGuinness, of counsel), for appellant.

Cotsirilos, Tighe & Streicker, Ltd., of Chicago (Theodore T. Poulos and Terence H. Campbell, of counsel), for appellee.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.

Presiding Justice Quinn and Justice Connors concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff-appellant Hannafan & Hannafan, Ltd. (Hannafan), appeals the order of the circuit court granting the third-party motion of citation respondent-appellee Cotsirilos, Tighe & Streicker, Ltd. (Cotsirilos), for an adverse claim. Hannafan had filed a motion to compel Cotsirilos to turn over $25,000 paid to it by Bloom, defendant in the underlying action, against whom Hannafan had secured a $52,190.23 judgment. Cotsirilos filed an adverse claim alleging that since Bloom had made the payment pursuant to an advance payment retainer, the monies became property of the firm not subject to a turnover order. For the reasons set forth below, we affirm.

¶ 2                         JURISDICTION

¶ 3    The trial court entered a final judgment in the instant case on February 8, 2011, and plaintiff filed his notice of appeal on March 10, 2011. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                         BACKGROUND

¶ 5    In the underlying action, Hannafan brought suit against Bloom and his affiliated companies to collect unpaid attorney fees and expenses. Hannafan obtained a judgment against Bloom in the amount of $52,190.23 on May 4, 2010. Bloom and the other defendants did not appeal that decision. In order to collect on the judgment, Hannafan issued a citation to discover assets to Cotsirilos. In response, Cotsirilos produced, among other documents, an advance payment retainer agreement between Bloom and Cotsirilos executed in December 2007. The agreement states as follows:

> "Before we begin work on this engagement, our firm requires payment by you of an advance payment retainer in the amount of $50,000.00. An 'advance payment retainer' is recognized and approved under Illinois law as a present payment by you to us as your

-2-

attorneys, in exchange for our commitment to provide legal services to you. Ownership of this sum passes to our firm immediately upon receipt of your advance payment retainer, and therefore the funds will not be held in a client trust account. Illinois law permits other forms of retainer, such as the 'security retainer,' in which a client pre-pays an amount which remains the client's property but that must be held in trust by your attorney until it is applied toward fees. As we discussed, Cotsirilos, Tighe & Streicker has determined that your interests in this matter and the nature of our practice are best served by the 'advance payment retainer' and so we require such payment in this engagement.

After we receive this advance payment retainer we will bill you on a monthly basis for the fees and expenses we incur on your behalf each month, and you agree to pay those monthly bills in full within 30 days of receipt. The advance payment retainer will be applied to our last invoice for services to you. If the amount of advance payments made by you during this engagement exceeds the amount of fees and expenses we charge during the course of the engagement, we will make a payment to you for the amount of such difference at the conclusion of our representation."

¶ 6 Hannafan also discovered that in December 2008, per Bloom's request, Cotsirilos applied $25,000 of the advance payment retainer against the then-unpaid and outstanding balance. On August 31, 2010, Hannafan filed a motion to turn over funds, arguing that the remaining $25,000 in Cotsirilos' possession was a security retainer subject to collection in partial satisfaction of its judgment against Bloom. Cotsirilos filed an adverse claim, contending that Bloom made the payment pursuant to an advance payment retainer and therefore the monies belonged to Cotsirilos, not Bloom. The trial court granted Cotsirilos' motion for an adverse claim, finding that although the advance payment retainer agreement "failed to include certain language," it was "in substantial compliance with the *Dowling* test." Hannafan filed this timely appeal.

¶ 7                                                    ANALYSIS

¶ 8 Hannafan contends that the trial court erred in granting Cotsirilos' adverse claim because the advance payment retainer agreement between Cotsirilos and Bloom does not fully conform to the requirements set forth in *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277 (2007). It argues that the absence of even one of *Dowling*'s requirements designates the agreement as providing for a security retainer instead. Since the agreement provides for a security retainer, payments made pursuant to the agreement belong to Bloom and are therefore subject to judgment claims against him. The interpretation of an agreement is a question of law reviewed *de novo*. *K's Merchandise Mart, Inc. v. Northgate Ltd. Partnership*, 359 Ill. App. 3d 1137, 1142 (2005).

¶ 9 In *Dowling*, our supreme court first discussed the two "generally recognized" types of retainers. The first, referred to as " 'true,' " " 'general,' " or " 'classic' " retainer, is payment securing the attorney's availability during a specific period or for a specific matter. *Dowling*, 226 Ill. 2d at 286. This retainer "immediately becomes property of the lawyer, regardless of whether the lawyer ever actually performs any services for the client." *Id*. The second type

is a security retainer in which payments made remain the property of the client until the attorney applies it to charges for services actually rendered. *Id*. at 286. Since the money belongs to the client, a security retainer must be deposited in a separate client trust account. *Id.*

¶ 10    The *Dowling* court also "explicitly recognize[d] the existence of advance payment retainers." *Dowling*, 226 Ill. 2d at 292. This retainer represents a present payment to the attorney for his commitment to provide legal services in the future. *Id*. at 287. It becomes property of the attorney immediately upon payment, and the monies are deposited into the attorney's general account. *Id*. The court, however, cautioned that parties should use such retainers only when necessary to accomplish some specific purpose. Expressly stated as an example where an advance payment retainer is appropriate is "where the client wishes to hire counsel to represent him or her against judgment creditors. Paying the lawyer a security retainer means the funds remain the property of the client and may therefore be subject to the claims of the client's creditors. This could make it difficult for the client to hire legal counsel." *Id.* at 293.

¶ 11    An advance payment retainer agreement, as well as other retainer agreements, must "clearly set[ ] forth the parties' intentions." *Id.* at 292. The "guiding principle" of any retainer agreement "should be the protection of the client's interests," specifically his or her funds. *Id*. Adequate protection of the client's funds consists of a definitive separation of such monies from an attorney's account and an agreement as to how the attorney will make withdrawals and reimburse any unearned fees. *Id.* at 293, 295. In *Dowling* the court was confronted with an agreement containing many acknowledged ambiguities, the least of which was the absence of any reference to the document as an advance payment retainer by name. This prompted the court to spell out suggestions as to what should be included in an advance payment retainer agreement. To that end, the agreement must be in writing, refer to an advance payment retainer by name, and disclose "where [the retainer] will be deposited, and how the lawyer or law firm will handle withdrawals from the retainer in payment for services rendered." *Id*. at 294. Furthermore, the agreement "must contain language advising the client of the option to place his or her money into a security retainer" and "advise the client that the choice of the type of retainer to be used is the client's alone." *Id.* If an attorney will only accept an advance payment retainer before representing a client, "the agreement must so state, including the attorney's reasons therefor." *Id*. It must also "set forth the special purpose behind the retainer and explain why an advance payment retainer is advantageous to the client." *Id*. If the agreement does not clearly indicate the parties' intent, it "must be construed as providing for a security retainer." *Id*. at 294-95.

¶ 12    The retainer agreement between Bloom and Cotsirilos is in writing and explicitly contains the term "advance payment retainer." It clearly provides for the separation of funds by stating that payments made pursuant to the agreement belong to the firm "immediately upon receipt" and will not be deposited into a client trust account. The agreement explicitly lays out the manner of billing and how Cotsirilos will refund excess payments. It also advised Bloom of the security retainer option. The agreement does not state that Bloom alone has the option to choose a retainer, or set forth in detail why Cotsirilos deemed an advance payment retainer advantageous to Bloom and required use of such a retainer. However, the agreement

-4-

expressly sets out that the parties discussed those matters. At the hearing on the adverse claim, Cotsirilos expanded on the discussion with its client and explained that the agreement does not spell out the advantages of an advance payment retainer in Bloom's situation because his case involves sensitive issues which the parties sought to keep confidential from third parties. That unrebutted testimony makes certain that under the facts of this case, requiring the parties to put such details in writing would not have served the best interests of the client. Bloom's signing the document acknowledged this and indicated his consent. We find that the agreement here, read as a whole, clearly manifests the parties' intent to be bound by the terms of their advance payment retainer. We adhere to the guiding principle set forth in *Dowling* to protect the client's interests. We find that the Bloom/Cotsirilos advance payment retainer agreement substantially complies with the requirements of *Dowling*.

¶ 13    Hannafan disagrees, arguing that advance payment retainer agreements must strictly comply with *Dowling*'s requirements regardless of the parties' intent. As support, Hannafan cites bankruptcy case *In re Mortakis*, 405 B.R. 293 (N.D. Ill. 2009). Although the bankruptcy court in *Mortakis* found that the agreement before it did not meet all of *Dowling*'s requirements, it also noted that the agreement did not clearly indicate the parties' intent to utilize an advance payment retainer. *Mortakis*, 405 B.R. at 299. The agreement did not refer to an "advance payment retainer," nor did it state whether payments made belonged to the client or whether the funds would be placed in a client trust account. *Id.* The agreement here is distinguishable because it uses the term "advance payment retainer" and specifies that payments made belong to the firm "immediately upon receipt" and will not be placed in a client trust account. Moreover, as discussed above, the agreement between Bloom and Cotsirilos clearly indicates the parties' intent to use an advance payment retainer. We are also mindful of the fact that *Mortakis* is a federal bankruptcy case construing Illinois law on this issue. This court is generally not bound by such decisions. See *Inland Bank & Trust v. Knight*, 399 Ill. App. 3d 378, 382 (2010). We do not find *Mortakis* persuasive here.

¶ 14    In the end, *Dowling* declined to explicitly hold that a valid advance payment retainer agreement requires the incorporation of all the elements listed therein. In determining that "the standards governing such retainers are to be given prospective application," the court referred to its analysis of the elements in which it "*suggested* how agreements establishing those retainers should be structured." (Emphasis added.) *Dowling*, 226 Ill. 2d at 299. The use of the word "suggest" negates any presumption that the court intended the elements to be mandatory. See *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 494 (2002). The court at this point could have expressed an intent that future advance payment retainer agreements strictly comply with the elements set forth in *Dowling*, but chose not to do so.

¶ 15    Furthermore, Hannafan is not a party to the retainer agreement but rather is a judgment creditor. The *Dowling* court sought to protect the interests of clients, not third-party creditors. Bloom wanted Cotsirilos to provide him legal representation against judgment creditors, a situation *Dowling* specified as appropriate for the use of an advance payment retainer. Bloom and Cotsirilos believed that an advance payment retainer would best serve Bloom, and the agreement references their discussion. However, they did not want to reveal details of his case in writing lest the information be used later to Bloom's detriment. If *Dowling* is read to require strict compliance, a client in Bloom's position would be precluded from executing

an enforceable advance payment retainer agreement even if he agrees such a retainer provides the best protection of his interests. *Dowling* did not intend such a result.

¶ 16    Contrary to Hannafan's argument, the *Dowling* court considered the manifestation of the parties' intent key to structuring an acceptable advance payment retainer agreement. In upholding the existence of advance payment retainers in Illinois, the court "agree[d] with the suggestions of *amici* regarding the necessity of reducing advance payment retainer agreements to writing and clearly setting forth the parties' intentions in those agreements." *Dowling*, 226 Ill. 2d at 292. Only if "the parties' intent cannot be gleaned from the language of their agreement" will courts construe it as providing for a security retainer. *Id.* at 295.

¶ 17    This result conforms to the basic tenets of contract law. The retainer agreement is a contract. In construing a contract, the court's primary objective is to ascertain and give effect to the parties' intent as evidenced by the plain language used in the agreement. *In re Doyle*, 144 Ill. 2d 451, 468 (1991). "A contract should be given a fair and reasonable construction based upon all of its provisions, read as a whole." *Dowling*, 226 Ill. 2d at 296. Although Hannafan contends that an advance payment retainer agreement "is a unique and specific type of contract" requiring elements "in addition to mere offer, acceptance and consideration," it has not cited any case holding that such agreements are unique contracts such that the clear intent of the parties is not given effect. Pursuant to the standards set forth in *Dowling*, the plain language of the agreement at bar, read as a whole, unambiguously indicates Bloom's and Cotsirilos' intent to use an advance payment retainer.

¶ 18    Hannafan further argues that the *Dowling* elements are mandatory because Rule 1.15(c) of the Illinois Rules of Professional Conduct "explicitly adopted the holding in *Dowling* concerning advance payment retainers" and thus Cotsirilos could not ignore those requirements. Ill. Rs. Prof'l Conduct R. 1.15 (adopted July 1, 2009, eff. Jan. 1, 2010). Hannafan first raised this argument in its reply brief and there is no indication in the record that it raised the issue before the trial court. "Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). We also note that Rule 1.15(c) was first adopted July 1, 2009, more than 18 months after Bloom and Cotsirilos executed the advance payment retainer agreement at issue. Prior to that date, the Code did not even refer to advance payment retainers. See *Dowling*, 226 Ill. 2d at 289. Hannafan does not argue how Rule 1.15 applies here.

¶ 19    In any event, Rule 1.15(c) provides:

"An agreement for an advance payment retainer shall be in writing signed by the client that uses the term 'advance payment retainer' to describe the retainer, and states the following:

    (1) the special purpose for the advance payment retainer and an explanation why it is advantageous to the client;

    (2) that the retainer will not be held in a client trust account, that it will become the property of the lawyer upon payment, and that it will be deposited in the lawyer's general account;

    (3) the manner in which the retainer will be applied for services rendered and

expenses incurred;

> (4) that any portion of the retainer that is not earned or required for expenses will be refunded to the client;

> (5) that the client has the option to employ a security retainer, provided, however, that if the lawyer is unwilling to represent the client without receiving an advance payment retainer, the agreement must so state and provide the lawyer's reasons for that condition." Ill. Rs. Prof'l Conduct R. 1.15(c) (eff. Sept. 1, 2011).

The rule codifies all but one of the requirements listed in *Dowling* that Hannafan contends is missing from the agreement at issue here: that the agreement clearly specify exactly where payments will be deposited (other than in either a client trust account or a lawyer's general account). As to the other requirements of Rule 1.15(c), the advance payment retainer agreement between Bloom and Cotsirilos sufficiently complies as previously discussed.

¶ 20　　Hannafan's final contention is that Cotsirilos violated the terms of the agreement by treating the $50,000 payment as a security retainer when it withdrew $25,000 for services already rendered. Therefore, Hannafan argues, the remaining $25,000 should also be considered security retainer funds. We are not persuaded by Hannafan's argument. It appears that Bloom and Cotsirilos intended only to modify the existing agreement. A modification is a change "which introduces new elements into the details of the contract, or cancels some of them, but leaves the general purpose *** undisturbed." *Schwinder v. Austin Bank of Chicago*, 348 Ill. App. 3d 461, 468 (2004). A valid modification must satisfy all criteria for a valid enforceable contract, including offer, acceptance and consideration. *Id*. Parties to a written contract may modify its terms by a subsequent oral agreement. *Estate of Kern v. Handelsman*, 115 Ill. App. 3d 789, 793 (1983). Despite a change in how $25,000 of the retainer was applied, the overall characteristic and obligations of the advance payment retainer agreement remained unchanged. See *Schwinder*, 348 Ill. App. 3d at 468.

¶ 21　　For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 22　　Affirmed.