# Illinois Official Reports

## Appellate Court

*Cox v. US Fitness, LLC*, 2013 IL App (1st) 122442

| | |
|---|---|
| Appellate Court Caption | ERIN COX, Plaintiff-Appellant, v. US FITNESS, LLC, d/b/a Fitness Formula Clubs-Union Station, and ZACHARY BEACHLER, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-12-2442 |
| Filed | December 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendants in plaintiff's action for the injuries she suffered when she fell while performing an exercise at defendant fitness club under the direction of her personal trainer, since the trial court properly found the liability release that was included in the plaintiff's membership agreement governed her personal injury claim, and plaintiff did not provide any support for her claims that defendants' failure to produce the supplemental personal training contract warranted the inference that the supplemental contract disavowed the exculpatory provision of the membership agreement, that the typographical errors in the membership agreement rendered that agreement void, and that the releases at issue were against public policy. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-1423; the Hon. Jeffrey Lawrence, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Corboy & Demetrio, PC, of Chicago, for appellant.

Dana Crowley & Associates, of Chicago, for appellees.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski and Mason concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff Erin Cox filed suit against her gymnasium and personal trainer, defendants US Fitness, LLC, and Zachary Beachler, after she fell and sustained a severe injury to her wrist during a personal training session. She alleged that defendants negligently instructed her to perform a dangerous exercise and used certain equipment in an unsafe manner, among other claims. The trial court granted defendants' motion for summary judgment, and Cox appealed.

¶ 2 Cox argues the trial court erred in three ways: (i) holding that the liability release in the parties' membership agreement governed her personal injury claim; (ii) ignoring issues of fact raised by a supplemental personal training agreement, which was not found in discovery; and (iii) failing to void the membership agreement as unconscionable or against public policy. Finding no error in the granting of summary judgment, we affirm the judgment.

¶ 3                              BACKGROUND

¶ 4 Defendant US Fitness owns and operates a fitness club in Chicago named Fitness Formula Club. On March 4, 2009, plaintiff Erin Cox entered into a membership agreement with US Fitness to use its club facilities. The agreement contained a waiver, which read:

> "I have been informed that Fitness Formula Clubs (the Clubs) and its affiliated clubs and its owners, officers and employees will not be liable in lawsuits including negligence lawsuits brought against them by members or their guests. As material consideration for Fitness Formula Clubs and its affiliated clubs permitting members and guests to use the Club or its facilities, each member or guest agrees to specifically assume *all risks of personal injury*, property loss or other damages including risk associated with fitness classes and *equipment*, sports exercise, all locker room facilities and *fitness advisory services* and all other facilities. Further, all members and their guests waive any and all claims against any Fitness Formula Club, its affiliated clubs and the owners, officers, and employees of the Club for any personal injury, property loss or other damages connected to or arising out of any of the associated risks." (Emphases added.)

Desiree Buford, member services director for US Fitness, enrolled Cox. She asked Cox to read the liability waiver and to sign if she understood. Cox did not read or ask any questions about

the waiver and signed the agreement. Buford did not receive any training or instructions about how to answer questions about the waiver of liability, and she did not know what the term "fitness advisory services" meant.

¶ 5        As part of her membership, Cox received a complimentary personal training session with a trainer named Timi Wusu, an employee of US Fitness. During the session, Wusu asked Cox about her fitness goals, but did not instruct her in any exercises. That day or the next, Cox purchased from US Fitness a package of personal training sessions with Wusu. When Cox signed up for these sessions, she signed a second contract, though no second contract was produced during discovery nor is it part of the record. After several sessions with Wusu, he left US Fitness. Defendant Zachary Beachler took over as Cox's personal trainer.

¶ 6        Beachler explained and demonstrated how to perform certain exercises. During these sessions, Beachler had Cox do jumping exercises, including jumping from standing onto a set of risers placed on the floor. On the day of the accident, Beachler set the risers to 18 inches high. Cox, who stood at 5 feet 5 inches, jumped on top of the risers and stepped down. On the second jump, as Cox described it, the riser collapsed and she fell backwards, severely injuring her wrist.

¶ 7        Cox filed suit against US Fitness and Beachler, alleging that defendants negligently (i) stacked the risers, (ii) instructed Cox on how to jump on top of the risers, (iii) failed to implement necessary safety measures when instructing Cox on how to jump onto the risers, and (iv) failed to train employees on how to safely instruct, monitor, and supervise Cox's exercise. Defendants moved for summary judgment. The circuit court granted the motion. This appeal followed.

¶ 8                                                Standard of Review

¶ 9        "Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A triable issue of fact precluding summary judgment exists "where there is a dispute as to material facts, or where, the material facts being undisputed, reasonable persons might draw different inferences from the facts." (Internal quotation marks omitted.) *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 215 (2001). This court's review of a disposition by summary judgment is *de novo*. *Beltran*, 2013 IL App (1st) 121128, ¶ 43. The party moving for summary judgment bears the initial burden of proof. *Id*.

¶ 10                                               ANALYSIS
¶ 11                                  Validity of Exculpatory Clause
¶ 12       Cox argues that there was a question of fact as to whether her claim falls within the scope of the exculpatory clause.

¶ 13       Courts construe contracts to give effect to the intention of the parties as expressed in the language of the agreement. *Platt v. Gateway International Motorsports Corp.*, 351 Ill. App. 3d 326, 329 (2004). Illinois law construes contracts as a whole, and generally disallows extrinsic

evidence unless an ambiguity exists within the contract's four corners. *Id.* at 330. A court may consider extrinsic evidence to determine the intent of language predisposed to more than one reasonable meaning. *Id.*; *West Bend Mutual Insurance Co. v. Talton*, 2013 IL App (2d) 120814, ¶ 19.

¶ 14 Illinois permits parties to contract away liability for their own negligence. *Hellweg v. Special Events Management*, 2011 IL App (1st) 103604, ¶ 6. But exculpatory clauses exempting liability for negligence are generally disfavored and are strictly construed against the party they benefit. *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 412 (2007). "General language is not sufficient to indicate an intention to absolve a party from liability for negligence; the language should be clear, explicit and unequivocal. [Citation.] 'In this way the plaintiff will be put on notice of the range of dangers for which he [or she] assumes the risk of injury, enabling him [or her] to minimize the risk by exercising a greater degree of caution.' " *Jewelers Mutual Insurance Co. v. Firstar Bank Illinois*, 341 Ill. App. 3d 14, 19 (2003) (quoting *Garrison v. Combined Fitness Centre, Ltd.*, 201 Ill. App. 3d 581, 585 (1990)). "The precise occurrence that results in injury *** need not have been contemplated by the parties at the time of contracting." *Id.* "The injury must only fall within the scope of possible dangers ordinarily accompanying the activity and, therefore, reasonably contemplated by the parties." (Internal quotation marks omitted.) *Hamer v. City Segway Tours of Chicago, LLC*, 402 Ill. App. 3d 42, 45 (2010). The foreseeability of a specific danger defines the scope. *Hellweg*, 2011 IL App. (1st) 103604, ¶ 6. "The relevant inquiry *** is not whether plaintiff foresaw defendants' exact act of negligence," but "whether plaintiff knew or should have known" the accident "was a risk encompassed by his [or her] release." *Id.* ¶ 7.

¶ 15 For example, in *Hellweg*, the plaintiff bicycle racer injured himself when he collided with a nonparticipating bicyclist. *Id.* ¶ 3. He sued the race organizers, alleging they failed to properly close the streets. *Id.* The trial court dismissed the action, and the appellate court affirmed, holding that the release of liability signed by the plaintiff absolved the organizers. *Id.* ¶ 6. The release language listed "dangers of collision with pedestrians, vehicles, other riders, and fixed or moving objects" as part of the waiver. (Internal quotation marks omitted.) *Id.* The appellate court noted that "[t]he presence of nonparticipants in bicycle races conducted on municipal streets is an inherent and reasonably foreseeable risk. *** [P]laintiff's release plainly contemplates the possibility of *** other riders *** on the course." *Id.*; see *Johnson v. Salvation Army*, 2011 IL App (1st) 103323, ¶¶ 37-38 (reading release broadly in view of activities outlined in contract).

¶ 16 Cox argues that the membership agreement does not encompass her claim of negligent instruction in directing her to perform a dangerous exercise. She further asserts that the terms "fitness advisory services" and "sports exercise"–which are included in the release–do not encompass personal training, but does not explain a basis for her reasoning.

¶ 17 In the membership agreement, Cox "assume[d] all risks of personal injury *** including risk associated with *** equipment *** and fitness advisory services." While the phrase "fitness advisory services" may include a broad range of services offered at the gym, its plain meaning encompasses personal training sessions, which quite literally include advice and instruction to improve physical fitness. It is foreseeable, and thus the release reasonably

contemplates, that a member may fall and be injured during a personal training session due to inadequate or faulty instruction. That is to say, not all advice is good advice, even when professionally given. The trial court therefore properly dismissed Cox's claims for negligent instruction. See *Falkner v. Hinckley Parachute Center, Inc.*, 178 Ill. App. 3d 597, 603 (1989) ("The risk of unsafe equipment, negligent instruction, and death can be contemplated by a participant, and the terms of the exculpatory clause are broad enough to cover these situations.").

¶ 18    Moreover, the release includes injuries caused by equipment. Dangers ordinarily contemplated in the use of equipment include misuse that leads to injury. Cox claimed that Beachler negligently stacked the risers before she fell. This misuse is foreseeable and therefore covered in the release. Accordingly, the trial court properly disposed of Cox's claim that Beachler negligently stacked the risers.

¶ 19    Cox further argues that personal training sessions were not reasonably contemplated by the parties at the time they signed the membership agreement and therefore the release cannot cover her sessions. We disagree. The risk of negligent instruction and misused or faulty equipment occurred from the moment Cox started her membership, as it included access to fitness classes and gym equipment. This reasoning aside, Cox's argument still lacks merit. The parties need not predict the exact occurrence and injury when executing the release. *Jewelers Mutual Insurance Co.*, 341 Ill. App. 3d at 19. That Cox expanded the services she purchased from defendants to include personal training does not affect how we interpret the release language as a matter of law.

¶ 20    Cox next asserts an issue of fact regarding whether her injury is the type that ordinarily accompanies personal training. She cites *Simpson v. Byron Dragway, Inc.*, 210 Ill. App. 3d 639 (1991), involving a race car driver killed when his dragster collided with a deer after he crossed the finish line. *Id.* at 640. The record indicated that the track announcer had seen the deer start to run toward the track midway through the nine second race. *Id.* at 642-43. The announcer saw the deer near the track a few months earlier, and recalled that races had been halted two years earlier due to deer "in the vicinity." *Id.* at 643. The release that the racer signed required him to inspect "the track and adjacent areas" before the race, and waived all claims for injury arising from participation in the race. *Id.* at 642. The trial court granted summary judgment, and the appellate court reversed. The panel held that there was a question of fact whether striking a deer during a drag race was a reasonably foreseeable danger anticipated in the release because "the danger which caused decedent's accident was not the type of risk which ordinarily accompanied the sport of auto racing." *Id.* at 649. The appellate court distinguished numerous cases where–as a matter of law–the risk of a particular injury was reasonably foreseeable and ordinarily accompanied the activity. *Id.* ("horseback riders and falling from horse, *** weightlifter and injury from weights, *** sky diver and entangled parachute during jump, *** pit crew member at racetrack struck by race car"); see *Larsen v. Vic Tanny International*, 130 Ill. App. 3d 574, 578 (1984) (holding danger of combustible cleaning compounds not reasonably foreseeable based on language of gymnasium release).

¶ 21    We believe the issue of whether Cox's injury is within the scope of the release language, unlike *Simpson*, can be decided as a matter of law. Cox fell while exercising using certain gym

equipment and receiving instruction from her personal trainer. Cox's injury fits the type of injury reasonably foreseeable based on the language of the release. The issue in *Simpson*–whether racers charged to inspect the track should expect deer on the drag strip–wanders much further afield from standards of common experience and could not be resolved on summary judgment. See *Larsen*, 130 Ill. App. 3d at 577 ("where fair-minded people could draw different inferences from the facts presented, the issue should be submitted to a trier of fact").

¶ 22 Cox also argues that Buford's testimony that she did not know the meaning of the term "fitness advisory services" made summary judgment improper. Buford's testimony on this point is irrelevant. Where a contract is interpreted as a matter of law, the contracting parties' "subjective intentions are irrelevant; rather, the pertinent inquiry focuses upon the objective manifestations of the parties, including the language they used in the contract." *Carey v. Richards Building Supply Co.*, 367 Ill. App. 3d 724, 727 (2006). Buford's subjective understanding, or lack of it, is irrelevant to the court's construction.

¶ 23                              Supplemental Agreement

¶ 24 Cox notes that she purchased her personal training packages separately from her membership and that US Fitness did not disclose a separate contract for those packages during discovery. She concludes that "[d]ue to defendants' inability to provide a supplemental agreement, it can be *inferred* that the supplemental contract did not contain an exculpatory clause; or, if viewed in a light most favorable to the non-movant, it contained a clause disavowing the exculpatory clause in the General Membership Agreement." (Emphasis added.) The record does not support Cox's inference. Moreover, Cox does not suggest that defendants withheld the personal training agreement during discovery.

¶ 25 Cox argues that the personal training contract modified the membership agreement. A contract modification involves one or more changes that introduce new elements into the details of the contract and cancels others, but leaves the general purpose and effect settled. See *Ross v. May Co.*, 377 Ill. App. 3d 387, 391 (2007). "A valid modification must satisfy all criteria for a valid enforceable contract, including offer, acceptance and consideration." *Hannafan & Hannafan, Ltd. v. Bloom*, 2011 IL App (1st) 110722, ¶ 20. But Cox presented no evidence that the personal training contract contained language that modified the release terms in the membership agreement. Even without a copy of the signed personal training agreement, Cox does not suggest that the agreement for personal training was anything other than a form agreement presented for signature. Because Cox could have attained a specimen of the personal training contract, she had the ability to demonstrate that its terms varied or cancelled the waiver of liability contained in the membership agreement. Without a specimen agreement, the record contains nothing to conclude an issue of fact exists on this point.

¶ 26 In responding to defendants' motion for summary judgment, Cox had the burden of showing that the release in the membership agreement was somehow void or inapplicable. *Ulm v. Memorial Medical Center*, 2012 IL App (4th) 110421, ¶ 16 (On summary judgment, if "the defendant raises an affirmative defense and establishes his [or her] factual position with supporting documents, the plaintiff must present a factual basis arguably entitling [the

- 6 -

plaintiff] to a judgment," but is not required to prove his or her case in chief.). Cox has no evidence on this point, and clings to a nonexistent contract. Speculation is not a basis to proceed to trial. *Water Applications & Systems Corp. v. Bituminous Casualty Corp.*, 2013 IL App (1st) 120983, ¶ 33 ("Mere speculation, conjecture, or guess is insufficient to withstand summary judgment.").

¶ 27　　The standards of summary judgment do not require the court to infer, as Cox argues, that the nonexistent personal training agreement modified the terms of the release. The requirement that the court make reasonable inferences against the movant only applies when the court is called on to decide whether the movant has met its burden of proof and the initial burden of production. *Sanders v. Stasi*, 2011 IL App (4th) 100750, ¶ 14. Where a defendant moves for summary judgment on an affirmative defense, and meets its burdens, the burden shifts to the plaintiff to present a factual basis arguably entitling him to a judgment. *Id*. At that point, Cox no longer receives the benefit of the doubt under the standards of summary judgment, and she failed to meet her burden.

¶ 28　　Cox next contends summary judgment was improper under the Physical Fitness Services Act. 815 ILCS 645/1 *et seq.* (West 2008). That statute requires:

> "Every contract for physical fitness services shall be in writing and shall be subject to this Act. All provisions, requirements and prohibitions which are mandated by this Act shall be contained in the *written contract* before it is signed by the customer. A copy of the written contract shall be given to the customer at the time the customer signs the contract. Physical fitness centers shall maintain original copies of all contracts for services for as long as such contracts are in effect and for a period of *3 years* thereafter." (Emphases added.) 815 ILCS 645/4 (West 2008).

In support, Cox cites *O'Brien v. Landers*, No. 1:10-cv-02765, 2011 WL 221865 (N.D. Ill. Jan. 24, 2011). But the federal trial court in *O'Brien* did not discuss the fitness center's failure to comply with the statute's writing requirement. *Id.* at \*3. Instead, it found that failure to disclose "the customer's total payment obligation for services" created a cause of action. *Id.* (citing 815 ILCS 645/5 (West 2008)). Cox makes no argument as to how defendants' supposed violation of the writing requirement under the Physical Fitness Services Act created a question of material fact that made summary judgment improper. Her conclusory argument lacks support. *Barth v. State Farm Fire & Casualty Co.*, 371 Ill. App. 3d 498, 507 (2007) ("Mere contentions, without argument or citation of authority, do not merit consideration on appeal." (Internal quotation marks omitted.)).


¶ 29　　　　　　　　　　　　Unconscionability and Public Policy

¶ 30　　Cox next asserts the doctrine of unconscionability voids the membership agreement.

¶ 31　　Whether a contract is unconscionable is a matter of law. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 99 (2006). The courts recognize two types of unconscionability: (i) "procedural unconscionability" occurs where "a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into

account a lack of bargaining power;" and (ii) "substantive unconscionability refers to those terms which are inordinately one-sided in one party's favor." *Id*. at 100.

¶ 32 Procedurally unconscionable contract formation deprives the weaker party of making a meaningful choice. *In re Marriage of Tabassum*, 377 Ill. App. 3d 761, 775 (2007). To determine procedural unconscionability, courts consider: (i) the manner in which the contract was entered into; (ii) whether each party had a reasonable opportunity to understand the terms of the contract; and (iii) whether important terms were hidden in a maze of fine print. *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 989-90 (1980). "To be a part of the bargain, a provision limiting the defendant's liability must, unless incorporated into the contract through prior course of dealings or trade usage, have been bargained for, brought to the purchaser's attention or be conspicuous." *Id.* at 990.

¶ 33 The release was neither hidden nor inconspicuous. Just above the signature line in Cox's membership agreement is the release, labeled in large bold letters "Liability Agreement." Cox had every opportunity to read the release, and was asked to read the agreement before signing. Accordingly, we find no procedural unconscionability in the inclusion of the release.

¶ 34 Cox asserts that if the release applied to personal training sessions, then it indicates that she lacked bargaining power, since she did not sign up for personal training until after executing the membership agreement. We realize that Cox had little bargaining power as she had no hand in drafting the membership agreement, but this does not relieve Cox of establishing both her lack of bargaining power and that the nature of the formation process deprived her of a meaningful choice. *All American Roofing, Inc. v. Zurich American Insurance Co.*, 404 Ill. App. 3d 438, 452 (2010). She has not pointed to anything in the record indicating that defendants hid the release from her in anyway.

¶ 35 Cox further argues that the errors in the agreement (indicating she was "male," charging her the wrong amount for her dues) also void the agreement under the Physical Fitness Services Act, which states: "Any contract for physical fitness services entered into in reliance upon any false, fraudulent, or misleading information, representation, notice, or advertisement of the physical fitness center or any of its employees or agents shall be void and unenforceable." 815 ILCS 645/10(b) (West 2008). This provision does not allow a party to void a contract for physical fitness services for typos in filling out the agreement. Instead, its plain meaning indicates it applies to false "information, representation, notice, or advertisement" outside of any contract, as these things are typically not included in the agreement.

¶ 36 Cox next argues that the release contradicts the public policy of allowing injured parties to recover from those negligently responsible for their injuries. We disagree. "We will not invalidate an agreement on public policy grounds unless it is 'clearly contrary' to what our statutes or court decisions have declared to be public policy, or unless it is 'manifestly injurious to the public welfare.' " *American Access Casualty Co. v. Reyes*, 2012 IL App (2d) 120296, ¶ 10 (quoting *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Insurance Co.*, 215 Ill. 2d 121, 129 (2005)). No statute, including the Physical Fitness Services Act, outright voids releases in gymnasium membership such as the version here. Our courts have held that these clauses are enforceable and not against public policy. *Kubisen v. Chicago*

*Health Clubs*, 69 Ill. App. 3d 463, 466-67 (1979). Cox does not point to anything so "manifestly injurious to the public welfare" as to overrule our precedent. Courts "must act with care in extending those rules which say that a given contract is void because against public policy" since doing so would alter the terms of many contracts freely entered into. *Morris v. The Broadview, Inc.*, 328 Ill. App. 267, 274 (1946). Accordingly, no facts or circumstances exist here that would void the release on public policy grounds.

¶ 37                                      CONCLUSION

¶ 38        The trial court properly granted defendants' motion for summary judgment.

¶ 39        Affirmed.